[No. 7,087.  In Bank.—April 3, 1885.]

THE PEOPLE, EX REL. J. L. LOVE, ATTORNEY GENERAL, RESPONDENT, v. JOHN CENTER ET AL., APPELLANTS AND RESPONDENTS.

ACTION TO QUIET TITLE—PLAINTIFF OUT OF POSSESSION—NATURE OF RELIEF.— Section 738 of the Code of Civil Procedure authorizes an action to quiet title to be maintained by a plaintiff out of possession.  The defendant in such action may assert a legal estate, or any equity which he may claim to have enforced; and the judgment, if in favor of the plaintiff, may provide for a restitution of the possession, and decree the claims of the defendant to be invalid.

## 552          PEOPLE *v.* CENTER.          [Sup. Ct.

SWAMP LANDS—ACT OF APRIL 10, 1862, CONSTRUED—CERTIFICATE OF RECLA-MATION—PATENT—POSSESSION.—In the absence of a certificate by the governor and surveyor general to the reclamation, as required by section 6 of the act of April 10, 1862, a patent for swamp and overflowed lands, purporting to be issued under such act, is void, and conveys no title or right of possession as against the state to either the original patentees or their grantees; and the fact that the patent was signed by the governor, and countersigned by the register of the state land office, is not equivalent to such certificate, although the office of register and surveyor general were held by the same person. Nor can a message addressed by the governor to the Senate and Assembly, in which he says, " We believe that under the provisions of the act the grantees and their assigns are entitled to, or at least have a strong claim to, the odd-numbered sections," etc., be construed to be such certificate.

ID. — PERFORMANCE OF RECLAMATION — CONDITION PRECEDENT. — Conceding that, if the governor and surveyor general had made the statutory certificate, it would be conclusive evidence that the condition precedent as to the performance of the reclamation had been complied with, the patentees —the condition precedent not having in fact been performed—should not be permitted to remain in possession without the certificate.

ID.—PRESUMPTIONS AS TO RECLAMATION—BURDEN OF PROOF.—At the end of three years after the passage of the statute, no presumption came into ex- istence that the grantees had done the work required, for the state could not thus be deprived of its rights by a presumption. On the contrary, the burden was, and continued to be, on the grantees, or their assigns, to prove that the work had been done, the doing of which constituted a condition precedent to the acquisition of any rights by them. The presumption, in the absence of evidence, would have been that the work was not done within the three years or at all.

ID.—FAILURE TO COMPLETE RECLAMATION—FORFEITURE—PART PRFORMANCE. —The act of April 10, 1862, was a contract by which the state granted certain lands upon condition of work to be performed, the grant to take effect when the work was done ; and upon a failure to make performance within the time limited by the statute, a court of equity will not interfere to protect the parties in possession, although they have made valuable improvements on the land.

ID.—QUIETING TITLE—ADEQUACY OF LEGAL REMEDY.—Where it appears that the defendant has acquired no equity which a court of equity can enforce, an action to quiet title to land, brought under section 738 of the Code of Civil Procedure, will not be dismissed because of the adequacy of plaintiff's legal remedy.

ID.—STATUTE OF LIMITATIONS AGAINST STATE.—Under section 315 of the Code of Civil Procedure, an action by the state to quiet title to lands may be brought at any time within ten years after the cause of action accrued.

FINDINGS—OMISSION IN WHEN NOT ERROR.—The failure to find on a material issue will not warrant a reversal of the judgment, if the findings omitted must have been adverse to the appellant.

ADVERSE CLAIM WITHOUT POSSESSION—LEGAL TITLE.—The mere assertion of an adverse claim, without possession or any proceeding to enforce it, can never ripen into a legal or equitable right, as against one seized of the legal estate when the adverse claim was first asserted.

ATTORNEY GENERAL—AUTHORITY TO BRING PRESENT ACTION.—The act of March 20, 1878, recognizing the pendency and approving of the prosecution of the present action, is equivalent to an original authorization to the attorney general to commence the action, and prosecute it to final judgment.

NEW TRIAL—IMMATERIAL CONCLUSION OF LAW.—A new trial will not be granted merely because of an unnecessary and immaterial statement in the conclusions of law.

APPEAL—NOTICE—ENTRY OF JUDGMENT—DISMISSAL.—An appeal from a judgment will be dismissed, if the notice of appeal therefrom was served and filed prior to the entry of the judgment.

APPEAL from a judgment of the late Twelfth District Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to cancel, as a cloud upon plaintiff's title, a patent issued by the governor, on November 11, 1867, for 89 120 acres of swamp land in Fresno and Kern counties. Soon after the institution of the action, the legislature passed the act of March 20, 1878, set forth in the opinion of Mr. Justice Thornton. Within the sixty days allowed by the act, all of the defendants, except the appellants, filed supplemental answers, claiming the land and the benefits of the act. Final judgment was entered in favor of the defendants filing supplemental answers. From the judgment, and from an order denying them a new trial, the other defendants appealed. The further facts are stated in the opinion of the court, and in the opinion of Mr. Justice Thornton of December 30, 1884.

*Philip J. Galpin*, for Appellants.

Conceding that the patent alone is not of itself a conveyance of the fee, because there is no law authorizing the signers of it to alienate the public domain; still, if the legislature had already withdrawn from entry in favor of the patentees the lands patented, and had granted to them the lands so withdrawn (the fee to vest upon the performance of a certain condition subsequent), and had confided to certain officers to determine whether that condition had been fulfilled, then the patent (if void as a conveyance) is good, as the official record of the government that the proper officers had duly and legally determined that the condition subsequent had been fulfilled. (*Beard* v. *Federy*, 3 Wal. 492; *Fremont* v. *U. S.*, 17 How. 560; *Reichart* v. *Felps*, 6 Wal. 165; *Durfee* v. *Plaisted*, 38 Cal. 83; *Thompson* v. *True*, 48 Cal. 610; *U. S.* v. *Arredondo*, 6 Pet. 727; *Lambert* v. *Carr*, 9 Mass. 85.) The patent, if not a conveyance,

being a record of the government, establishes the facts therein recited, and determines the prior existence of all facts which necessarily precede the issuance of the patent. (*Semple* v. *Hagav*, 27 Cal. 163 ; *Heckman* v. *Boffman*, Hardin's Rep. 362 ; *Jackson* v. *Wilcox*, 1 Scam. 344.) The legal presumption being that public officers have performed their duty, the existence of the patent raises the presumption that the governor and register made the proper certificate of reclamation. (1 Phil. Ev. 553 ; *Farrar* v. *Merrill*, 1 Greenlf. 17 ; 1 Cowan & Hill, Notes, 67 ; *Bank of U. S.* v. *Danbridge*, 12 Wheat. 70.) The patent is operative to certify that the governor and surveyor general approved the reclamation. (*Hyman* v. *Read*, 13 Cal. 454 ; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 589 ; *Hornblower* v. *Boulton*, 8 T. R. 95 ; 1 Washburne's Real Property, 524 ; *Commonwealth* v. *Roxbury*, 9 Gray, 492 ; *Baker* v. *Fales*, 16 Mass. 497; *Throckmorton* v. *Tracy*, Plowd. 161 ; *Smith* v. *Frederick*, 1 Russ. 174 ; *Clausickard* v. *Sidney*, Hob. 277 ; *Heywood's Case*, 2 Rep. 35 b.; *Jackson* v. *Blodget*, 16 John. 172 ; *Megerle* v. *Ashe*, 27 Cal. 327 ; *Kernan* v. *Griffith*, 27 Cal. 89 ; *Ward* v. *Bartholomew*, 6 Pick. 414 ; *Doe* v. *Beardsley*, 2 McLean, 412 ; *Stockton* v. *Williams*, 1 Doug. 546 ; *Fletcher* v. *Peck*, 6 Cranch, 87 ; *Sargent* v. *Simpson*, 8 Me. 148 ; *Grignon* v. *Astor*, 2 How. 319 ; *Waterman* v. *Smith*, 13 Cal. 419 ; *Goodlet* v. *Smithson*, 5 Port. 243.)

*Jas. T. Boyd*, also for Appellants.

*Warren Olney*, and *Stetson & Houghton*, for certain Respondents.

The appeal from the judgment should be dismissed, having been taken before the judgment was entered. (*Thomas* v. *Anderson*, 55 Cal. 43 ; *McLaughlin* v. *Doherty*, 54 Cal. 519.) The patent of November 11th, 1867, is void, because there had been no certificate by the governor and surveyor general to the reclamation. (*Parker* v. *Duff*, 47 Cal. 554 ; *McGarrahan* v. *N. I. M. Co.*, 49 Cal. 335 ; *U. S.* v. *Stone*, 2 Wall. 525 ; *Summers* v. *Dickenson*, 9 Cal. 554 ; *Doll* v. *Meador*, 16 Cal. 295 ; *Attorney General* v. *Thomas*, 31 Mich. 365 ; *Rondell* v. *Fay*, 32 Cal. 354 ; *Broder* v. *N. W. & M. Co.*, 50 Cal. 623 ; *Railway Co.* v.

*Prescott*, 16 Wall. 604.) The patent was not equivalent to a certificate of reclamation. (*Leonard* v. *Darlington*, 6 Cal. 124; *People* v. *Coghill*, 47 Cal. 361.) The signing of the patent by the register was not a signing by the surveyor general. (Pol. Code, § 1031; *People* v. *Edwards*, 9 Cal. 286; *Lathrop* v. *Brittain*, 30 Cal. 680; *People* v. *Ross*, 38 Cal. 76; *McGarrahan* v. *Min. Co.*, 96 U. S. 316.) The action is not barred by the statute of limitations. (Angell on Limitations, §§ 34, 37; *U. S.* v. *Hoar*, 2 Mason, 314; Code Civil Proc., § 315.)

*S. L. Cutter, J. S. Bugbee, B. Brundage,* and *A. C. Freeman,* for other Respondents.

McKINSTRY, J.—The action was treated by the court below as an action " to quiet title," under section 738 of the Code of Civil Procedure, and may properly be said to be such an action. The absolute ownership of the lands by the plaintiff is averred, and it is alleged that the defendants claim rights under the acts of the legislature, and a certain instrument purporting to be a patent, which are mentioned in the complaint. Besides the prayer for general relief, there is a special prayer that defendants be summoned to answer the premises, and that the court decree to be invalid all claims of defendants under or by virtue of the alleged legislative grant or patent.

Section 254 of the act known as the practice act, reads :

" An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest."

Under that section the owner in possession, on knowledge of the assertion of an adverse claim, could require the nature and character of the adverse estate or interest " to be produced, exposed, and judicially determined." (*Curtis* v. *Sutter*, 15 Cal. 263.) " There was no difficulty in so conducting a suit, under the statute, as fully to protect the *legal* rights of the parties, and at the same time to secure the beneficial result afforded by a court of equity in bills of peace—which is repose from further litigation. Indeed, the remedy under the statute was eminently simple, direct and efficacious." (Ibid.)

Section 738 of the Code of Civil Procedure is like section

254 of the former act, except that since the adoption of the code the action may be brought by one out of possession. Now, as formerly, the defendant may assert a legal estate, or any equity which he may claim to have enforced, the difference being that while under the former statute the possession of the plaintiff was evidence, *prima facie*, that he was seized in fee, now the plaintiff out of possession, as against the defendant in possession, must prove in himself a legal paramount title which entitles him to the possession. The plaintiff—assuming the state to be entitled to the possession—might have brought an action at law for the recovery of the lands. Under the code, one having the legal title is not required to bring his action at law, and then, after recovery of the possession, to file a bill to quiet his title or possession against equitable claims asserted by the defendant in the ejectment, and to have such claims decreed to be invalid, but may secure both ends in one proceeding. It may be the original defendants herein would have been entitled to demand a jury to try the legal issue as to the right of possession, but a jury was expressly waived. The plaintiff has asked, in effect, that the adverse claims of the defendants be produced, exposed, and adjudicated. The people, when they had established their legal title and right of possession, were to be treated as if they were in possession when the complaint was filed. In their answer the defendants, appealing, allege facts, which, with the evidence to support the allegations, they contend show that they have acquired the legal title of the state by virtue of a compliance, on the part of their predecessors, with the conditions of certain acts of the legislature, to wit: an act " to provide for the construction of canals," etc., approved April 11, 1857 ; an act amendatory of the last-named act, approved April 10, 1862, and an act " in relation to the construction of canals," etc., approved April 25, 1863. (Stats. 1857, 192; Stats. 1862, 190; Stats. 1863, 494.) Of these, further reference need be made only to the act of 1862.

The defendant says that such reclamation was made, within three years, as was required by the act of 1862; and that the governor and surveyor general certified to the reclamation as provided in the sixth section of that act. But the evidence sustained the finding of the court below, that neither the grantees

nor their assigns ever reclaimed, so as to make the lands susceptible of cultivation, any of the districts described in the act. And the court also found that the governor and surveyor general never certified to the reclamation of the lands in any district. There is no pretense that the surveyor general ever joined in any certificate that lands had been reclaimed, unless the patent, signed by the governor and countersigned by the "register of the state land office," constitutes such certificate. The register had no power except such as was conferred by statute (Hittell's Gen. Law. par. 4196); and the duty of certifying to the reclamation, imposed by the act of 1862, was imposed upon the surveyor general. The fact that the same person held both offices did not authorize the register to assume a function committed to the surveyor. But if the patent be considered as a writing signed both by the governor and surveyor general, it contains no declarations or recitals showing that the statute conditions had been complied with. The statute divides the lands described in it into three districts, and provides for the vesting of the state title to (one-half of ?) the odd-numbered sections within a district, upon reclamation of all the lands within such district. The patent does not recite that the lands of any district have been reclaimed. And of the recited considerations for the grant, one is the "release" by the patentees of all the other lands mentioned in the act of 1862. Clearly, the patent is not, and does not purport to be, the approval and certificate required by that act. As a pretended conveyance the patent is void, because there was no law which authorized the governor to sign, seal, or issue it.

It is urged by appellants that a certain message of the governor to the senate and assembly, advising legislation—never enacted—which would empower him to do that which he subsequently attempted to do, without any law authorizing it (to issue a patent for lands within the description contained in the act of 1862), is a certificate of reclamation, such as is required by the act. In his message, the governor said: "We believe that under the provisions of the acts referred to, the grantees and their assigns are entitled to, *or at least have a strong claim to*, the odd-numbered sections," etc. By the statutes, the duty of the governor and surveyor general was distinctly laid down.

If any of the districts was reclaimed within three years, it was the duty of the two officers so to certify. Without such certificate, no title to any of the lands became vested in the grantees. (Stats. 1862, 192, § 6.) We cannot construe a document to be a certificate, the writer of which carefully avoids a certification.

The state has never parted with the legal title. And, as neither the original defendants herein nor their predecessors acquired a perfect equity in the lands, such as would authorize them to demand the statutory certificate from the governor and surveyor general (even if it be conceded, notwithstanding the proviso of the sixth section of the act of 1862, that the grantees might, by performance of the condition precedent, have acquired an equitable right to the possession, as against the legal title), the state is entitled to the possession of the lands.

It may be claimed that, inasmuch as the act of 1862 does not limit the time within which the governor and surveyor general shall certify to the reclamation of the lands, such certificate may still be made ; and the defendants should be allowed to remain in possession, under the state, until those officers have discharged their duty of determining whether or not the required reclamation was made within the three years mentioned in the statute. But the statute does not impose on the governor and surveyor general the duty of certifying that the lands *were not* reclaimed. So that, if the defendants are justified in the assertion of the claim suggested, they have acquired all the benefits of a title in fee, without the performance of the condition precedent, or the occurrence of the event, on which it was to be acquired. Even if it should be admitted, that, if the governor and surveyor general had made the statutory certificate, such certificate would be conclusive evidence that the condition precedent had been performed, the defendants (the condition precedent not having in fact been performed) should not be permitted to remain in possession without the certificate. At the end of three years after the passage of the statute, no presumption came into existence that the grantees had done the work required—for the state could not thus be deprived of its rights by a presumption. On the contrary, the burden was, and continued to be, on the grantees, or their assigns, to prove

that the work had been done, the doing of which constituted a condition precedent to the acquisition of any rights by them. The presumption, in the absence of evidence, would have been that the work was not done within the three years, or at all ; a presumption to be overcome by proof on the part of the grantees or assigns that it was done. A certificate of the governor and surveyor general that it had been done, might, *perhaps*, have been sufficient evidence that the work was done. But as to this, it is not necessary to express an opinion.

2. The appellants contend that if they and their associates have not the legal title, yet by reason of expenditures on the lands they have acquired an equity which should protect their possession, as against any proceeding *in a court of equity*. It is said the present suit is to enforce a forfeiture, and that equity will not entertain a bill to declare or enforce a forfeiture. The suggestion is, that the court below, as a court of equity, had no jurisdiction to try the right of possession at law, disconnected from the adverse pretension of defendants to legal or equitable rights, and that a determination that such adverse pretension is without foundation, must involve a forfeiture of defendants' equitable rights. But the action is not to forfeit any rights of the defendants. It is an action, under section 738 of the Code of Civil Procedure, to obtain a judgment that the plaintiffs are legally the owners of the lands; that the defendants have no legal estate, nor any equities such as would entitle them to retain the possession as against the title of the state ; and that they have no equities which would justify a decree in their favor as against the legal owner in possession. Plaintiffs having shown that they are at law entitled to the possession, the case, in other respects, is to be treated as if the plaintiffs were in possession when the complaint was filed. In an action under the provision of the code both the legal and equitable rights of the parties may be determined. Treating plaintiffs as in possession, the *onus* was on the defendants to show that they should be relieved of the alleged "forfeiture," or rather that they should be relieved of the consequences of a failure to execute their contract according to its terms. (*Crook* v. *Forsyth*, 30 Cal. 662.) The act of 1862 was a contract by which the state granted certain lands, upon condition of work to be performed,

the grant to take effect when the work was done; a contract by which valuable rights might have been acquired absolutely, upon the performance of the acts specified as the consideration moving to the state. It was, at most, a grant upon condition precedent. (*Montgomery* v. *Kasson*, 16 Cal. 189.)

The grant never took effect, because the condition precedent was never performed. If it should be conceded that the original defendants have asserted a claim to relief, based on a part performance, within the three years mentioned in the act of 1862, or by reason of anything which has occurred since, it was for them to establish affirmatively that they were entitled to such relief.

3. The original defendants have failed to establish that they are entitled to any relief. It is true, a court of equity does not favor forfeitures. It will not aid in divesting an estate. It may interfere to prevent the divesting of an estate. But here there is no question of forfeiture. By the terms of the agreement between the state and the parties named in the statute, the whole of the work required was a condition precedent, and a court of equity will not, by its decree, give an estate which has never vested. (*Carey* v. *Bertie*, 2 Vern. 398.)

Nor could the court treat the answer of the defendants as a bill in the nature of a bill for specific performance, and grant the relief appropriate to such a suit. It does not appear that the grantees or their assigns have ever reclaimed the lands in any district; and if they had, they certainly would not be authorized to demand a conveyance of any lands without such district, or of any lands within it, except the odd-numbered sections. But, independent of the consideration last suggested, the statute of 1862 clearly makes time of the essence of the contract. The whole tenor of the statute shows this, and the fifth section reads : " A failure to comply with the provisions of this act * * * shall work a forfeiture of said grant," etc. As we have seen, it has been judicially determined that the grant was not to take effect until the conditions were performed. (*Montgomery* v. *Kasson*, *supra*.) If section 5 had any effect, it operated *suo Marte*, at the end of three years, and no action of any court was necessary to give it force. But, whatever its effect in other respects, it clearly indicates that it was the in-

tention of the parties to the contract that the " grantees " should acquire no rights, unless the lands of a district were reclaimed within three years.  As between private parties to a contract for the sale and purchase of lands, time is of the essence of the contract, in the view of a court of equity, if it appears to have been the real intention of the parties that it should be so.  (Fry on Specific Perf., 710 ; Waterman, 458.)

In the case before us, one of the parties to the contract is the state.  Of course, we cannot decree that a patent be issued by the governor, or that a certificate be executed by the governor and surveyor general, or the creation of any other document to evidence a transfer of the state title—in the absence of a statute to authorize it.  With reference to the disposition of state lands, the state officers have just such powers as the statutes confer, and none other.

In view of this fact, those dealing with the state with reference to such lands, do so with full knowledge of the necessity of complete performance of the contract on their part as a prerequisite to the acquisition of any rights.  To decree to the successors of the persons named in the act of 1862 a muniment of title—the condition precedent on which alone they would have the right to receive it not having been fully performed—would be simply to dispose of the lands of the state without authority of law.  The defendants did not acquire the title of the state, and we cannot adjudge that they ought to have it by reason of a substantial compliance on their part with the conditions of the grant.  First, it does not appear that there has been such substantial compliance ; second, time was of the essence of the statutory contract ; and third, such decree would be in substance a decree for specific performance.  We cannot decree that the state specifically perform a contract, where there has been no complete performance of the contract by the other party to it.  To do so would be to deprive the state of lands which it has never granted, and which no officer of the state has power to grant.  It would be an attempt to legislate.

4.  It may be said that if it appear the grantees or their assigns could not, under the acts of the legislature, acquire an equity which a court of equity can enforce, the present suit should be dismissed, because the plaintiffs had a perfect remedy

at law. Under our system, a defendant in an action at law to recover lands, against whom judgment has passed, cannot subsequently, in a distinct suit, assert a legal right which existed when the ejectment was commenced, nor subsequently claim relief based upon an equity which was *pleaded* by cross-complaint in the ejectment. So far the judgment in favor of the plaintiff, in the action of ejectment, is conclusive of the defendant's rights. But a decree, in a suit under section 738 of the Code of Civil Procedure, that the defendant has no right, title or interest in certain lands, would seem to be more effective, as a final adjudication with respect to the legal rights of the parties, than would be a mere judgment for the recovery of the possession. The latter, to some extent, leaves open to be proved, by evidence *dehors* the record, *what* rights might have been asserted in the action of ejectment.

In an action under section 738 of the Code of Civil Procedure, it is not necessary to allege in the complaint the nature of the estate or interest claimed by the defendant. (*Crook* v. *Forsyth, supra.*) Until the answer comes in, setting forth the defendant's claim, it need not appear that the issues to be tried will be *legal*, as distinguished from equitable issues. A proceeding by which one may compel another to expose and have adjudicated the nature of the interest on which he is asserting an adverse claim against the estate of the former, is one to be conducted in a court of equity. The discovery of the nature of the adverse claim precedes its adjudication.

It may be added that, strictly speaking, we have no separate courts of law and equity. Within the limits of the constitution, the legislature may provide the mode by which, in particular cases, the jurisdiction of the Superior Court shall be employed —may, amongst other things, prescribe the form of judgment to be entered.

Section 738 of the Code of Civil Procedure allows an action to be brought by any person against another who claims an estate or interest adverse to him. Its language is very broad. If the plaintiff is out and the defendant is in possession, nevertheless, the action can be maintained. So if the plaintiff and the defendant each claims to be the owner in fee. In the last case the question—who has the better right—may be tried in

the action in the form usually called (for want of a better name) ejectment, but it may also be tried in an action under section 738 of the code. Whether, when brought under the the code, the action be called an action at law, in which the statute authorizes a judgment determining the estate or interest claimed by the defendant, or be called a suit in equity to quiet the plaintiff's title against the adverse claim, the Superior Court has jurisdiction. If it be considered an action at law, the defendant may demand a jury; but here, as we have seen, a jury was waived. In the case at bar, the defendants appealing averred in their answer that they were in possession of the lands when the action was commenced. The court did not find upon that averment, and defendants do not complain of the omission. But the omission is immaterial, because the action is maintainable whether they were or were not in possession.

5. An inspection of the complaint shows this to be a suit by the people of the state "in respect to real property," as to which the statutory limitation is ten years. (C. C. P., § 315.) Section 315 of the Code of Civil Procedure applies not only to actions at law to recover the possession of lands, but to suits in equity "in respect to any lands" to which an adverse possession for the time mentioned in the section may be pleaded in bar. (*The People* v. *Clarke*, 9 N. Y. 349.) The other sections of the same code, referred to in the answer of the defendants appealing, do not apply to actions brought by the state, because they do not expressly include such actions. (Angell on Limitations, 34, 37.) Section 345 relates to actions mentioned in chapter third of the code. Unless, therefore, the limitation prescribed in section 315 is the only limitation applicable to the present action, there is no limitation of time within which such an action must be brought. It follows that the issues created by the presumed denials of the pleas of limitation which relate to sections of the Code of Civil Procedure, other than section 315, are immaterial issues, the failure to find on which is immaterial.

6. It has been suggested that the action is barred by section 315 of the Code of Civil Procedure, because it does not appear that the title on which the people rely was acquired within ten years prior to the commencement of the action.

The section reads : " The people of this state shall not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless :

" 1.   Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced ; or,

" 2.   The people, or those from whom they claim, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years."

It is plain the legislature did not intend to take from the state the right to recover a portion of its lands, if it should be ousted of its possession more than ten years after its title accrued.   No action can be brought *for*, or to recover the possession of, any lands of the state, until the state has been deprived of the possession.   If such deprivation should not occur until more than ten years after the people acquired the title, and the provision of the code should be read as prohibiting a suit more than ten years after the title was acquired, the effect would be a loss to the state, by mere lapse of time, of all rights to lands to which it had originally a perfect title, and of which it had retained the possession until a point of time immediately preceding the entry of another.   To give effect to the first subdivision of the section recited, it must be construed as declaring, in effect, that the people of the state will not sue " for or in respect to real property," except where the cause of action has accrued within ten years.   Such is the language (forty being substituted for ten years) of section 362 of the New York Code of Civil Procedure.   (Wood on Limitations, 677.)

7.   Appellants contend that the order denying a new trial must be reversed, for the reason that the court below failed to find upon the issue made by the answer referring to section 315 of the Code of Civil Procedure, and the implied denial thereof.

When the court fails to find on a material issue, the judgment will not be reversed, if the finding omitted must have been adverse to the appellant.   Such is the rule laid down in *Hutchings* v. *Castle*, 48 Cal. 152.   The rule has been since followed. (*McCourtney* v. *Fortune*, 57 Cal. 617.)   If carefully examined, the cases apparently in conflict with it will be found not to be really so.

The time to commence an action under section 738 of the Code of Civil Procedure, is limited only by a continuous adverse possession of the lands for ten years, on the part of the defendant. The mere assertion of an adverse claim, without possession or any proceding to enforce it, can never ripen into a legal or equitable right, as against one seized of the legal estate when the adverse claim was first asserted. Each day's assertion of an adverse claim gives a cause of action to " quiet title " until such an action has been brought. An actual adverse possession of the land, accompanied by a claim to the fee, will give the legal title, in which will be merged all lesser estates or equitable claims which the possessor may have asserted. Here, on facts proved beyond controversy, the court could not have found a ten years' continuous adverse possession by the original defendants or their grantors.

The persons named in the acts of 1857 and 1862 entered into the possession under the contract with the state set forth in the former and substantially repeated in the latter act. The three years prescribed in the act of 1862 within which lands were to be reclaimed, as a condition precedent to the vesting of the state title in the grantees, expired April 10, 1865. There is nothing in the evidence to indicate that the grantees commenced to occupy adversely after the expiration of the three years. But, if this had appeared, the adverse holding was not continued for ten years. On the contrary, on the 11th day of November, 1867, the persons named in the act of 1862, or their assignees, received a patent, signed by the governor, with the state seal attached, purporting to grant to such persons and their assigns the state title to the lands to which this action relates, under which and the acts aforesaid the original defendants herein claim to have acquired the title. If it be conceded the patent is *void*, the reception of it, and claim under it, were nevertheless a recognition of the title of the state, which would have suspended the running of the statute even had the running of the statutory limitation commenced. (*Farish* v. *Coon*, 40 Cal. 33.) If, therefore, the court below had found ten years' adverse possession by the defendants, or their predecessors, the plaintiffs would have been entitled to a new trial, since there was no evidence to sustain such a finding.

Again, the " grantees " entered into possession of such lands
as they took possession of, under a contract by which they
agreed that no title should pass unless the governor and sur-
veyor general should certify to certain reclamations.   It is ob-
vious that the defendants, who have neither reclaimed the lands
nor received the certificate, had not been holding adversely to
the state when this action was commenced.

8.   Appellants contend that the attorney general has no
powers except such as are conferred by statute, and no statute
authorized him to bring this action.   In *People* v. *Stratton*, 25
Cal. 242, the Supreme Court said that, without any statute ex-
pressly conferring the power, the attorney general may file an
information in the nature of a bill in chancery to annul a patent,
when the matter involved in the suit immediately concerns the
interests of the state; but it is claimed that the statement was
merely *dictum*.   However this may be, the legislature has ex-
pressly recognized the pendency and approved of the prosecu-
tion of the present suit.   (Stats. 1877–8, p. 358.)   This ap-
proval and ratification of the conduct of the attorney general
relates to the filing of the complaint, and is equivalent to an
original authorization to commence the action and prosecute it
to judgment.

9.   The patent relied on as constituting a certificate of rec-
lamation, was issued without authority of law.   Of this we take
judicial notice.   The patent is therefore void.   Inasmuch as the
instrument, if it remained uncancelled, would not pass the title,
nor cast upon the state the burden of proving its invalidity by
extrinsic evidence, liable to loss, or to be availed of only in a
court of equity, it is no cloud on the plaintiff's title.   (*Pixley*
v. *Huggins*, 15 Cal. 127, and many cases following the rule
there laid down.)   But the action is brought not only to annul
the patent, but for a decree that the plaintiffs out of possession
are the legal owners entitled to the possession, and that the de-
fendants have acquired no rights under the acts of the legisla-
ture.   The question whether they have acquired rights under
the acts of the legislature is to be determined upon evidence
that the defendants or their predecessors did or did not reclaim
the lands ; or at least, that the governor and surveyor general
had so certified, as required by the acts.   Under the code, the

plaintiffs were entitled to have determined the claim of defendants that they were the owners of the lands, or had acquired some rights in them. Inasmuch as the court below declared as a conclusion of law, on the facts found, that the original defendants have no right, title, or interest in the lands to which they assert a claim, the further conclusion of law that the patent is void, and they have acquired no rights under it, is unimportant. As the greater includes the less, the declaration that the defendants have *no* right, title, or interest would include a declaration that they have none under the patent, if the last had been omitted. We ought not to grant a new trial merely because of an unnecessary and immaterial statement in the conclusions of law.

10. The notice, termed a notice of appeal from the judgment, was served and filed prior to the entry of any final or other judgment in the court below. The appeal from the judgment should, therefore, be dismissed. (*McLaughlin* v. *Doherty*, 54 Cal. 519; *Thomas* v. *Anderson*, 55 Cal. 43.)

The appeal from the judgment is dismissed, and the order denying a new trial is affirmed.

Ross, J., SHARPSTEIN, J., and MYRICK, J., concurred.

THORTNON, J., concurring.—I adhere to my opinion formerly given in this case. If the full case were before us, I would concur in the opinion of Justice McKinstry. I say this upon a full examination of all the points discussed by him.

On December 30, 1884, the following opinion was rendered in Bank:

THORNTON, J.—This action was brought to annul a patent purporting to have been issued by the State of California to W. F. Montgomery and others, and their associates and assigns, and to declare the claims of defendants invalid. It is averred in the complaint that the patent was issued without authority of law, and is a cloud on the title of the state. The action was commenced on the 4th of December, 1875, against John Center, James T. Boyd, W. F. Montgomery, F. O. Carter, W. Bryant, F. W. Sampson, and fifty-seven other defendants, the latter being sued by fictitious names. There were several demurrers to

the complaint, all of which were overruled. Answers were then filed by defendants Center, Boyd, Bryant, Carter and others, by which issues were joined on most of the material allegations of the complaint. These answers were filed prior to March 20, 1878.

Subsequent to the commencement of the action, the legislature of this state passed an act entitled, " an act to provide for determining the rights of parties in certain swamp and overflowed lands in Fresno and Kern counties," which was approved on the day last named (see Stats. of 1877–78, p. 358), the preamble to which is as follows : ·

"·Whereas, the legislature of the State of California by three acts, approved respectively April 11, 1857, April 10, 1862, and April 25, 1863, granted to W. F. Montgomery and others certain lands in what were then the counties of Fresno and Tulare, upon certain conditions in said .acts named, and thereafter and on the 11th day of November, 1867, the governor and the register of the state land office, claiming to act under said statutes or some of them, issued a certain document, purporting to be a patent, for a portion of said lands to the grantees in said acts named; and whereas, an action has been brought by the attorney general, in the name of the people of this State, in the district court of the twelfth judicial district of the State of California, in and for the city and county of San Francisco, for the purpose of having the said patent adjudged to be null and void, which said action is numbered 19,140 upon the register of said court ; and whereas, certain persons claim that they have legal or equitable interests, under the grantees in said acts of the legislature mentioned, which they have purchased in good faith ; and that since the said document or patent was issued, the said last named persons have expended large sums of money in reclaiming and improving said lands, and that they have paid state and county taxes thereon for many years, and that said lands are substantially reclaimed."

The first and second sections of the foregoing act are as follows :

" SECTION 1. All persons claiming title, legal, or equitable, under said grantees, in the said acts of the legislature mentioned, shall have the right, within sixty days after the passage of this

act, to appear in the said action in the preamble herein mentioned, and to file their respective answers therein, which shall describe the said lands so claimed by them, respectively; and each of said persons shall be permitted, upon the trial of said action, to introduce evidence for the purpose of showing that he is a claimant, under the said grantees in the acts of the legislature mentioned, for any portion of the lands described in the said patent, and has paid state and county taxes thereon ; and has, also, since the date of said patent, to wit, November 11, 1867, made expenditures for the reclamation of the same, whether in connection with swamp land districts or otherwise, and for fencing upon or inclosing the same, and other improvements and expenditures upon or for its benefit, a sum which, with the taxes paid thereon by himself and his grantors, shall amount to the sum of one dollar per acre for the whole of the land so claimed by him.

" SEC. 2.    Upon proof being made to the satisfaction of the court that any party to said action is a claimant, under the grantees in said acts of the legislature mentioned, and has paid state and county taxes on the lands claimed by him ; and has, also, since the said 11th day of November, 1867, made expenditures for the reclamation of the same, whether in connection with swamp land districts or otherwise, and for fencing upon or inclosing the same, and other improvements and expenditures upon or for its benefit, a sum which, with the taxes paid thereon by himself and his grantors, shall amount to the sum of $1 per acre for the whole of the land so claimed by him, then a judgment shall be rendered in said action for such party for the said lands, describing them.    And, thereupon, a patent shall be issued by the governor and the register of the state land office, over the great seal of the state, to such person for his said lands, and the title of the State of California to said lands shall vest in the said person, his heirs and assigns, as of the date of the said judgment."

Under this act many persons appeared in this case, and filed their answers in accordance with its provisions.

The cause was tried in two separate and distinct portions.    It was tried, first, on issues arising on the pleadings filed prior to March 20, 1878.    On these issues, findings of fact and conclu-

sions of law were made and filed on the 16th day of September, 1878.

The conclusions of law were that plaintiff was entitled to the relief prayed for in the complaint, and the court below directed that judgment be entered accordingly, with costs in favor of plaintiff and against defendants.

Judgment was accordingly rendered and entered on the 2d of November, 1878.

After the trial of the first issues, the issues arising on the pleadings filed subsequently to the 20th of March, 1878, were tried, and findings of fact and conclusions of law on such issues were made and filed on the 16th of September, 1878, and judgment was entered on the same, on the 8th day of November, 1878.

The notice of appeal from the judgment bears date the 17th of October, 1878, and was served on that day, and on the 18th and 19th days of the same month. This was prior to the entry of the judgment, and, according to the well-settled rule of this court, was premature ; and as respondents have on this ground asked the dismissal of the appeal from the judgment, it must be dismissed. (*McLaughlin* v. *Doherty*, 54 Cal. 519 ; *Thomas* v. *Anderson*, 55 Cal. 43.)

There is also an appeal from an order denying a new trial ; and it is urged that this appeal must also be dismissed, for the reason that it was not given within the period of ten days allowed by law.

The decision in this cause was filed on the 16th of September, 1878. The parties aggrieved (this cause having been tried by the court without a jury) had ten days after notice to them of the decision of the court, to give notice of their intention to move for a new trial. It does not appear here that any notice of such decision was ever given. As no notice of such decision was given, we think the notice of intention to move for a new trial was in time.

It appears from the record, that the bill of exceptions was allowed and signed by the judge of the court below on a stipulation signed by Jo. Hamilton, attorney general, and Stewart & Greathouse, attorneys for plaintiff, and P. G. Galpin, attorney for certain defendants, that it was correct. The attorneys for

the other defendants, of whom there were several, were not parties to this stipulation. It appears that the bill of exceptions agreed to as above stated was presented to the judge, and by him allowed, as follows:

" The foregoing bill of exceptions having been agreed to by the respective attorneys, said statement is correct. WM. P. DAINGERFIELD, district judge."

The following order, denying a motion for a new trial, which seems to have been attached to or indorsed on the bill of exceptions, appears in the transcript:

Title of court and cause.    "Bill of Exceptions."

" On the foregoing bill of exceptions and statement, which have been agreed to by the attorneys in the cause, the motion for a new trial is denied."

It is contended that the foregoing recital by Judge Daingerfield, that the bill of exceptions was agreed to, shows that the attorneys representing all the parties agreed to it. In this we cannot concur. In the allowance of the bill as correct, it is clear that in the statement made by the judge, that " the foregoing bill of exceptions having been agreed to by the respective parties," he refers to the stipulation signed as above stated. He merely intended to state that it was agreed to by the parties whose attorneys signed the stipulation. It would be a very forced construction, and one which the facts would not justify, to hold otherwise. As to the recital in the order denying the motion for a new trial, we are of opinion that the judge did not intend to say more, as to the bill of exceptions, than he had said in his allowance of it; that he intended to say no more than that it had been agreed to by the plaintiff, and the defendants whose attorneys signed the stipulation above referred to.

We do not think that the above orders signed by Judge Daingerfield show that the bill of exceptions was agreed to by any other than the parties whose attorneys signed the stipulation.

Nor was the notice of motion for a new trial served on all the defendants. The only admission of service of this notice was by those defendants who were represented by Robinson, Olney & Byrne, and there were many other defendants not represented by them.

There is no statement anywhere in the record that any defendant or other person appeared on the argument of the motion for a new trial. As will be seen by reference to the order denying this motion, there is no statement that it was argued by any one.

From an examination of the record, it is manifest to us that the defendants, other than those represented by Mr. Galpin, were never heard in regard to the preparation or settlement of the bill of exceptions or statement, and that such defendants never appeared to argue the motion, or were heard in relation to it at all.

The notice of appeal from the order denying the motion for a new trial was only served on the defendants represented by Robinson, Olney & Byrne, Stetson & Houghton, C. R. Greathouse, A. L. Hart, and James B. Townsend. There were many other defendants, and on such other defendants the record shows no service of this notice. All the defendants not moving should have been served.

But inasmuch as the notice of intention to move for a new trial was not served on all the adverse parties, we find no error in the order denying a new trial, and it must be affirmed.

Rehearing denied.