PEOPLE, PLAINTIFF AND APPELLEE, *v.* ZAMORANO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action of Ejectment.

No. 2064.—Decided July 12, 1920.

PLEADING—AMENDMENT—VARIANCE—DEMURRER—PREJUDICE.—When an amendment is of such a nature that it should be allowed in the interest of justice the judgment appealed from will not be reversed because of defects or omissions that have been corrected by the adverse party, or of an immaterial variance between the pleadings and the evidence, in the absence of a seasonable demurrer, or if the evidence was admitted without objection, or if it appears clearly that the defendant was not materially prejudiced by such defect or omission.

JURISDICTION — INTERNATIONAL COMITY — ACTION AGAINST FOREIGN STATE. — In consequence of the absolute independence of every sovereign power and of the international comity which leads every sovereign state to respect the independence and dignity of other sovereign states, all states refuse to take jurisdiction through their courts of an action against any other state, or of the person of the sovereign of any other state, or of the public property of any other state, although the said sovereign or property may be found within their territory.

The facts are stated in the opinion.

*Mr. M. Moraza* for the appellant.

*The Attorney General* and *Mr. A. Arroyo* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The original complaint herein, filed by the Attorney General of Porto Rico in July, 1909, alleged that The People of Porto Rico is the owner of a certain lot described as follows:

"A lot situated in the first zone of the ward of Puerta de Tierra of the Municipality of San Juan, bounded for a distance of twenty meters on the north by lands belonging formerly to The People of Porto Rico and also by the public road leading from San Juan to Río Piedras; twenty meters on the south by the Covadonga Drive; ten meters on the east and eight meters on the west by lands also belonging to The People of Porto Rico."

Defendant set up that the land so described, recovery of which was sought, had been ceded to him by the Crown of Spain in payment of a debt amounting to 568 *pesos,* and asked that the Spanish Government be cited as such vendor in accordance with the provision of sections 1384 and 1385 of the Civil Code. This motion was denied.

In May, 1915, the assistant *fiscal* of the District Court of San Juan, without any very obvious reason or necessity therefor, filed an amended complaint, alleging, among other things—

"2. That the plaintiff is the owner in fee simple of the following property:

"A piece of land situated in the first zone of the ward of Puerta de Tierra of the municipal district of San Juan, with an area of about 6,279 square meters, bounded on the north by Highway No. 1 and by the lot belonging to the San Juan Local Board, whereon a school building—No. 1—is erected; on the south by the south parapet of the wall dividing this parcel from the street 'Comercio de la Marina' and by a lot occupied by Pedro Zamorano; on the east by a section of the road connecting this street with Highway No. 1; and on the west by the said lot of the School Board of San Juan."

"5. That the defendant, unlawfully trespassing upon the property right of the plaintiff, occupies and uses within the tract described in the second paragraph of this complaint, a parcel described as follows:

"A lot situated in the first zone of the Puerta de Tierra ward of the Municipality of San Juan, bounded on the north for a distance of twenty meters by the lands of The People of Porto Rico, formerly by the highway leading from San Juan to Río Piedras; twenty meters on the south by the Covadonga Drive; ten meters on the east by lands also belonging to The People of Porto Rico, and eight meters on the west likewise by property of The People of Porto Rico.

"6. That defendant acquired said property in the following form and manner: During the Spanish regime Pedro E. Zamorano contracted the right to collect the imposts on food-stuffs entering the city and to this end asked the government for leave to build a small house, which was granted by Royal Order of April 28, 1892, and the said building put up.

"That subsequently, on July 21, 1898, the defendant prayed the Captain General of the Island to transfer to him the ownership of the said lot in payment of the sum of $568 which the government owed him for the rent of a house which Zamorano had supplied for the purpose of providing a station for the members of the Civil Guard at the place known as Isla Verde in the Municipality of Carolina.

"That said Captain General, without process of law, granted defendant's petition, granting him the title of ownership of the said land so applied for and providing that the proper acquittance for the payment of the $568 due should be made out.

"Later and on August 9, 1900, Patricio Zamorano instituted dominion title proceedings in the District Court of San Juan, alleging that he was the owner of the lot and the house built thereon under title of purchase from Pedro E. Zamorano and in the course of such proceedings the court, on October 13, 1900, issued an order holding that the dominion title to the described property had been shown and directing that the proper certificate should issue to the end that the property might be recorded in the registry of property, said record having been entered at page 138, over, of volume 41 of San Juan property No. 1,697.—That Patricio Zamorano conveyed said property to Guillermo García Mayo and the latter transferred the same to the defendant in this action by deed of February 12, 1903, executed in this city and recorded in the name of the defendant at page 233 of volume 1 of Puerta de Tierra, property No. 1,697, entry No. 3.

"7. That the grant and transfer made to Zamorano by the Captain General of the Island was not supported by any Royal Decree

authorizing the same, nor was the King empowered by any special law enacted by the Spanish congress to alienate or grant the parcel in controversy which formed part of Spanish territory, nor did the said Captain General or Civil Governor obtain the authority of the proper Secretary of the Cabinet to make the said grant.

"8. That for failure to comply with the legal requirements the grant made to Zamorano, the dominion title proceeding and the records entered in the registry of property are all null and void."

The answer to the amended complaint contains the following admissions:

"The fifth paragraph of the complaint is true except as to the word 'unlawfully' appearing in the first line of said paragraph, since the defendant owns and possesses the land lawfully and by virtue of title of ownership recorded in his name in the registry of property.

"The sixth clause of the complaint is true except as to the words 'without process of law' included in the first line of subdivision three of the said clause."

The same admissions are contained in an amended answer subsequently filed, in which the fifth paragraph is revised to read as follows:

"The fifth paragraph of the complaint is true except as to the word 'unlawfully' appearing in the first line of said paragraph, since the defendant owns and possesses the land lawfully under grant made to him by the Spanish Government, ratified by the Treaty of Paris as a result of the Declaration of Peace between Spain and the United States and has a dominion title recorded in his name in the registry of property."

The judgment appealed from, following the prayer of the amended complaint, pronounced null and void the grant made by the Captain General, Governor of Porto Rico, on July 20, 1898, of the following parcel of land to Pedro E. Zamorano:

"A lot situated in the first zone of the ward of Puerta de Tierra of the Municipality of San Juan, bounded for a distance of twenty meters on the north by lands belonging to The People of Porto Rico,

previously by the highway leading from San Juan to Río Piedras; twenty meters on the south by the Covadonga Drive; ten meters on the east and eight meters on the west by lands also belonging to The People of Porto Rico.''

It also decreed the nullity of the dominion title proceeding approved by the District Court of San Juan on October 13, 1900, in favor of Patricio Zamorano in regard to the said property; the nullity of the record or conveyances made by Pedro Zamorano to Guillermo García Mayo and by the latter to Pedro E. Zamorano; adjudged The People of Porto Rico to be the sole owner of the parcel of land last above described and ordered the cancelation of the record of dominion title in the name of Pedro E. Zamorano and of the subsequent entries.

Appellant has filed no separate assignment of errors and would have small reason to complain if the judgment were affirmed without discussion of the merits. *Méndez* v. *Martínez,* 26 P. R. R. 87; *People* v. *Martínez,* 26 P. R. R. 226. We have taken the trouble, however, to read all of the voluminous unpaged brief with its long list of statutory provisions and judicial decisions said to have been ''infringed'' and will note briefly the more important questions discussed.

The brief sets forth in a rambling and more or less disconnected fashion that the plaintiff has not proved the ownership of the land sought to be recovered; that the complaint refers to a different property than that acquired and possessed by the defendant; that the plaintiff, in order to show ownership of the property described in the second paragraph of the amended complaint and to show that the parcel in possession of defendant is contained in such larger tract, presented a plan or survey made after the filing of the complaint without notice to the defendant and contrary to the provisions of section 286 of the Code of Civil Procedure and to section 22 of the Law of Evidence, to the admission of which defendant duly excepted.

Although the alleged erroneous admission of the map re-
ferred to is the point emphasized by the appellant in his
brief, the more serious aspect of this phase of the case and
the only question that has caused any hesitation in affirming
the judgment is not so much a question of admissibility of
evidence as one of variance between the *alegata* and *probata.*
Had not the defendant himself supplied the defect in plead-
ing by the admissions contained in his answer and not only
failed to object to any of the evidence for plaintiff, save in
one or two unimportant instances, as for example the map
above mentioned, but even corroborated by his own evidence
the facts so established, or if it appeared that the defendant
had been deceived, surprised or in any way misled to his
prejudice, we would be disposed to reverse the judgment
appealed from.

But, as we have already shown, the defendant, after the
filing of the original complaint, in his motion to include the
Spanish Government as a party, himself alleged that the
land described in the original complaint is the land claimed
to have been ceded to him by the Spanish Government.
Similarly, in both the original and the amended answer to
the amended complaint the defendant admits the possession
and claims the ownership of the same parcel of land de-
scribed and referred to in the fifth and sixth paragraphs
of the amended complaint and that the same is included
within the parcel described in the second paragraph of said
amended complaint, notwithstanding the self-evident mis-
take in the attempted specification of the southern boundary
of the larger parcel. There was no demurrer for ambiguity,
nor motion to make the complaint more specific.

Independently of the map and a certain certificate by the
registrar of property, admitted over the protest of the defend-
ant, it was abundantly shown by other evidence and without
objection that the lot now in the possession of the defend-
ant, at the time of the pretended transfer of title to him,

formed a part of the Spanish military reservation, being located near the ancient eastern gate within what was known as the first war zone of the fortified town of San Juan; that the same, together with other public lands the property of the Spanish Government, passed to the United States under the Treaty of Paris and was thereafter conveyed to The People of Porto Rico.

But in any event, whatever deficiency may have existed in this regard was supplied by the evidence adduced on behalf of the defendant.

Mention of the first two documents introduced by the defendant will suffice to show this, the same being described in the record as follows:

"1. A certificate issued on December 3, 1907, by Lázaro Argomániz, Colonel of Infantry, Secretary of the Military Government of the Province and Captain General of Madrid, attesting that the Royal Order of April 28, 1892, was published in Issue No. 93 of the *Official Gazette* of the War Department, whereby, in view of the statements of the Captain General of this Island of Porto Rico on March 5, 1892, accompanying a petition by Pedro E. Zamorano asking for leave to build a small house for the purpose of municipal taxation in the first zone of the town of San Juan, the King and in his name the Queen Regent of the Kingdom had seen fit to grant the prayer of the petitioner.

"2. A communication dated July 21, 1898, and signed by the Governor General of this city, addressed to the commander of the mounted section of the First Battalion of Volunteers, Pedro E. Zamorano, communicating a decision of the Captain General of the District of July 20, 1898, wherein the latter functionary declares that he has examined the petition presented to him by the commander of the mounted section of the First Battalion of Volunteers, Pedro Esteban Zamorano, praying that in consideration of the fact that there was due and owing to him the rent of the barracks for the use of the Civil Guard and Military Detachment at Isla Verde, Carolina, located on the property of said Zamorano, such rent amounting to $568 (*pesos*), and there being no appropriation for the discharge of this indebtedness in the previous budget according to the information already given him, he accorded in settlement the

lot containing a small frame house that was built at the Puerta de Tierra exit situated between the Covadonga Drive and the Central Highway, and that having examined the instrument embodying the grant or leave to build the said small house in the first fortified zone of this city, wherefrom it appears that by virtue of a Royal Order issued by the Department of War, H. M. the King and in his name the Queen Regent of the Kingdom, approving said sovereign grant, the land or lot solicited seemed also to have been ceded in harmony with the recommendation of the Chief of Engineers, the said instrument stating that there was no objection to the making of the said grant and that the same in no way affected or impaired the defense of the city, it was resolved to notify the petitioner that should the Royal Order embodying the grant prove inadequate as title of ownership, said functionary, by virtue of the power in him vested, granted the petition of the petitioner, who would be required to give full acquittance for the amounts due to him.''

The recital as to the admission of the plat in question, as one of the enumerated documents offered by the plaintiff, reads as follows:

''An official chart of the lands of Puerta de Tierra showing federal, insular and private lands in the wards. of 'Carbonera' and Puerta de Tierra of San Juan, attested by the Commissioner of the Interior, Manuel V. Domenech, the admission of which evidence was objected to by the attorney for the party defendant on the ground that it had not been made with the concurrence of defendant Pedro E. Zamorano, who is one of the private land owners to which the said documentary proof refers. The court admitted the map and the attorney for the defendant took exception.''

The first witness for the plaintiff testified in regard to this map and to other matters as follows:

''Enrique González testified under oath that he is a civil engineer and discharges the office of chief of the Division of Public Lands and archives in the Department of the Interior, which office he has held for ten years; that previously he was assistant in the same office for many years and had been a government functionary from the time of the American occupation. After examining the map introduced in evidence by the party plaintiff he testifies that it is a map of Puerta de Tierra showing federal, insular and private lands

as of November, 1909, and that the said map is genuine; that lot
No. 12 shown on the map and marked with yellow lines is a part
of the land belonging to The People of Porto Rico, being recorded
in the registry of property; that the section within the lot annotated
'Occupied by Zamorano' forms a part of the parcel above-mentioned
and is situated at a distance of approximately 150 meters from the
old walls that were demolished; that that lot is not numbered. (The
plaintiff states here that lot No. 12 of the parcel of land belonging
to The People of Porto Rico and the lot that the plan shows to be
held by Zamorano and to measure twenty by six meters and by three
is not numbered.)

"The witness goes on to testify that the matter of the public
lands of Porto Rico was under his charge; that the tract comprising
the lot owned by Zamorano belonged to the War Department prior
to the American invasion and that certain lots marked 1 to 22 were
turned over to the Treasury; that it was decided to turn over to
the municipality the streets alone, everything else being kept for the
War Department; that the lot to which he refers as belonging to
The People of Porto Rico is the parcel marked with yellow ink and
numbered 12; that the parcel to which he refers as being occupied
at this time by Zamorano is the one measuring twenty meters on
the north, twenty meters on the south, six meters on the east and
eight on the west, lying towards the east of the parcel and ap-
pearing as the property of the War Department; that the direction
of the walls was from north to south and were about 150 meters
from the said parcel.

"Upon cross examination by the defendant the witness testifies
that the map was traced in November, 1909, at which time he be-
lieves that the action in ejectment had not been begun by The People
of Porto Rico; that if the complaint is dated June 30, then in No-
vember of that same year the complaint had been filed; that at the
time of the survey Zamorano was in possession of the land in con-
troversy; that the survey was made by order of the Commissioner
of the Interior and he did not summon Zamorano to be present at
the tracing of the map because since the papers referring to Insular
and Federal property were in the custody of the Department and the
parcel belongs to the Government the resurvey was made in keeping
with such documents and it was not deemed necessary to summon
Zamorano because the land was considered as belonging to the Gov-
ernment and not to a private individual. In answer to questions put
by the judge he answered that the reason for not summoning Zamo-

rano was because the parcel was shown as belonging to the Government and it so appeared in the Department; that he knew that defendant Zamorano was in possession of the land because he had spoken with him at various times; that the land was inclosed. Cross-examined by defendant, the witness testifies that in addition to the fence there is a small frame house inclosed in the fenced lot."

At the time the map was offered no question was raised as to the proper identification thereof, no boundary dispute is involved and in so far as appears from the record the only purpose for which the plat was offered in evidence or could serve was to illustrate the testimony of the witness last above mentioned as an aid to the identification and location of the lot in question upon the ground. There is nothing to indicate that the document was relied upon as evidence of title in the plaintiff and we fail to perceive why a mere failure to resort to the procedure outlined in section 286 of the Code of Civil Procedure at the time of the re-survey should render the same inadmissible, nor does the brief of the appellant throw any great light upon the merits of the question so raised.

Indeed, the whole record conclusively shows that the defendant understood from the beginning that the property sought to be recovered was the property described in the original complaint and in the fifth paragraph of the amended complaint, as included within the larger tract, description of which was attempted in the second paragraph of the pleading last mentioned.

Sections 136, 137 and 142 of the Code of Civil Procedure read as follows:

"Section 136.—No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that the party has been so misled, the court may order the pleading to be amended, upon such terms as may be just.

"Section 137.—Then the variance is not material, as provided in

the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs.''

"Section 142.—The court must, in every state of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect.''

Where an amendment is of such a nature that it should have been allowed by the court below in the interest of substantial justice, on request, the judgment appealed from will not be reversed because of defects or omissions in the complaint which are supplied by the pleadings or the proof of the adverse party, or for immaterial variance between the allegations and the proof in the absence of timely challenge as to the sufficiency of such complaint, or if the evidence in question was introduced without objection, or if it plainly appears that the defendant has not been prejudiced in any substantial right by such defect or omission. Note to *Ellinhouse* v. *Ajax Live Stock Company*, L. R. A. 1916 D, p. 843.

A demurrer to the amended complaint herein specified want of facts sufficient to constitute a cause of action and the improper union of two distinct causes of action. The failure to make Patricio Zamorano and Guillermo García Mayo parties defendant is urged in the brief as the alleged want of facts. Defendant made no effort to have these parties brought in. There is nothing to show that they are necessary or even proper parties. Defendant, as the ostensible vendor of the one and vendee of the other, completed the circle of conveyances and had he cited them as warrantors they, in turn, might have cited him in the same capacity. Whatever interest they ever had, either in the dominion title, the entries on the record or the property itself was extinguished by the conveyance to defendant and record thereof in his name. We need not dwell on the obvious distinction between a defect of parties and a want of

facts sufficient to constitute a cause of action as grounds of demurrer.

In support of the alleged improper union of actions it is submitted that because the titles of both plaintiff and defendant are derived from a common source and the right to recover arises out of the "nullity" of defendant's title, the revendicatory action must be preceded by the "action for nullity." This question is not *res nova* in this court. *Oliver* v. *Oliver,* 23 P. R. R. 168; *Fulladosa* v. *Castro,* 27 P. R. R. 644; *Amy* v. *Amy,* 15 P. R. R. 387. See also Pomeroy Code Remedies, 4th Edition, pages 56–64; *People ex rel. Love, Attorney General,* v. *Center,* 66 Cal. 551; *Augus v. Craven,* 142 Cal. 691; *Cobe* v. *Crane,* 173 California, 116; *Holland* v. *Hotchkiss,* 162 Cal. 366; *Davis* v. *Crump,* 162 Cal. 513; *Wolf* v. *Gall,* 174 Cal. 140; *Hyatt* v. *Colkins,* 174 Cal. 580.

Here The People of Porto Rico derived title through the United States from Spain and such title does not depend for its validity upon the annulment of a more or less defective title in the defendant. The original pretended transfer of ownership to the defendant was absolutely void and whatever value the subsequent links in his chain might have as evidence of title if relied upon by innocent third parties, in the hands of defendant they prove nothing. The nullity of the dominion title being absolute, a pronouncement to this effect and the cancelation of the false entries of record are mere incidental results of the facts alleged and established in the revendicatory action. The Governor General had no more power to pass title to the lot in question than he had, or the present governor, or the colonel of the regiment, has today to alienate San Gerónimo or Morro Castle.

Defendant, a lieutenant of volunteers at the time of the original acquisition by him, must have known this, and what we have said on this point disposes also of the question of acquisitive prescription, for without color of title or with

a paper title known to be worthless there is no basis for such a claim.

Appellant also complains of the refusal to make the Crown of Spain a party to the controversy, but cites no authority to show the power of the court below in this regard.

"The principle to be deduced from the cases passing upon the question of the jurisdiction which the courts of one country have of an action against another country or the sovereign of another country, is that, as a consequence of the absolute independence of every sovereign authority, and of the international comity which induces every sovereign state to respect the independence and dignity of every other sovereign state, each state declines to exercise by means of its courts jurisdiction of an action against any other state, or over the person of any sovereign of any other state, or over the public property of any other state, though such sovereign or property is within its territory, and therefore, but for the common agreement, subject to its jurisdiction." 7 R. C. L. 1036, § 68.

The other questions discussed in the brief do not demand serious consideration.

The judgment appealed from must be

*Affirmed.*

Chief. Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.