This is a proceeding to foreclose a certificate of tax sale. The only issue raised by the pleadings is whether the certificate of tax sale includes all of the property described in the bill of complaint.
The certificate is dated February 9th, 1933, and recites that the property therein described was sold to the complainant City on January 31st, 1933, for unpaid municipal liens for $3,070.64. The property thus sold is described in that certificate as "Lot 6, Block 13, Section 6, on the official Tax Map of the City of Long Branch," and it was so assessed.
In the bill of complaint the property is described as follows:
"All that certain tract or parcel of land and premises, situate, lying and being in the City of Long Branch, County of Monmouth, and State of New Jersey.
"BEGINNING at a point in the high-water line of the Branchport Creek of the South Shrewsbury River where the same is intersected by the south side of a street leading from Patten Avenue to Price's Hotel, sometimes called Pleasure Bay Road; thence (1) south seventy seven degrees twenty-five minutes east along the south side of said street one hundred forty-two (142) feet to a point therein; (2) South one degree twenty-six minutes (1° 26') west three hundred thirty feet (330) to a corner; thence (3) north seventy-seven degrees twenty-five minutes (77° 26') west one hundred six and sixty-six hundredths feet (106.66') to a point in the high water line of said river; thence (4) along the high water line of said river, the several courses thereof, to the point or place of beginning.
"Also all the right, title and interest to the tract or parcel of land flowed by tide water in the Branchport Creek of the South Shrewsbury River, contiguous to the parcel of land hereinabove described and which said tract is more particularly described as follows:
"BEGINNING at a point in the high water line of the Branchport Creek of the South Shrewsbury River, where the same is intersected by the center line of the street leading from Patten Avenue to Prices Hotel and sometimes called Pleasure Bay Road; thence (1) in a westerly direction along the center line of said street produced in a westerly direction one hundred sixteen feet (116') to a point; thence (2) in a southerly direction two hundred twenty-nine feet more or *Page 268 
less (229' more or less) to a point; thence (3) in a southerly direction along a curved line deflecting to the east with a radius of three hundred feet (300') a distance of one hundred feet (100') to a point; thence (4) again in a southerly direction along a curved line deflecting to the east with a radius of two hundred fifty feet (250') a distance of one hundred seventy-seven feet (177') to a point; thence (5) in a northeasterly direction two hundred three feet (203') more or less to a point in the high water line of said river, said point being the end of the third course in the parcel hereinabove first described; thence (6) in a northerly direction along the high water line of said river, the several courses thereof, to the point or place of beginning.
"TOGETHER with the right of ingress and egress in and over a strip of land twenty feet wide throughout immediately adjoining the easterly boundary of the property herein conveyed, the easterly line of which right of way is parallel with the easterly line of the property herein conveyed and distant twenty feet therefrom for access from and to the main road to and from the property and docks of the party of the second part.
"BEING the same premises conveyed by The Second National Bank and Trust Company of Red Bank, N.J., a corporation, to Highlands, Long Branch and Red Bank Steamboat Company, a corporation of the State of New Jersey, by deed dated May 28th, 1929, and recorded in the Monmouth County Clerk's Office in Book 1485 of Deeds, page 71.
"ALSO being known and designated as Lot 6, Block 13, Section 6 on the Official Tax Map of the City of Long Branch and on the tax duplicate of said municipality."
It is the contention of the defendant Steamboat Company that only the tract first above described was assessed and sold at said tax sale, and that title to that tract only passed by the certificate.
The second tract described in the bill of complaint was conveyed to the predecessor in title of the defendant Steamboat Company by the State of New Jersey by riparian grant in fee, and is partially or wholly under the tidal waters of the state. Neither this tract nor the "right of ingress and egress" above described are shown upon the official tax map of the City of Long Branch. Lot 6, block 13, section 6, as shown on said map, is of the dimensions corresponding to those set forth in the first metes and bounds description of the bill.
Title to the property here involved was vested in the defendant Steamboat Company by deed from the Second *Page 269 
National Bank and Trust Company of Red Bank, New Jersey, dated May 28th, 1929, which was duly recorded in the Monmouth County clerk's office on June 17th, 1929, whereupon the clerk pursuant to statute, advised the tax assessor of the transfer by notice as follows:
 "dated May 28/29 recd June 17/29 Sec. 6, Block 13, Lot 6
The 2nd Nat'l Bank and Trust Co. of Red Bank to Highlands, Long Branch Red Bank Steamboat Co.
City of Long Branch; Beg in highwater line Branchport Creek of South Shrewsbury River where same is inters by S ed street leading from Patten Ave to Prices Hotel sometimes called Pleasure Bay Road th S 77 de 25 min E alg S sd sd st 142' to pt therein th S 1 de 26 min W 339' to cor the N 77 de 25 min W 106.66' to pt in highwater line of said river th alg highwater line of river to Beg. Also interest in land flowed by tide water in Branchport Creek of South Shrewsbury River, BEg. in highwater line Branchport Creek th W di alg center line of st leading from Patten Ave to Prices Hotel in W di 116' to pt th S c to Beg."
Two separate and distinct parcels of land are described in that notice. The metes and bounds of the first parcel described in that notice coincide with the metes and bounds description of lot 6, block 13, section 6, as shown on the official tax map. The second parcel, as already stated, is not shown on that map.
At the final hearing, Mr. Woolley, the tax assessor, testified that upon receipt of the above notice he plotted "Lot 6, Block 13, Section 6" on the official tax map and thereafter assessed the property described in that notice by that description only, but that it was his intention to include in the assessed valuation not only the upland admittedly included in that description, but also the lands included in the riparian grant.
In Jersey City v. Board of Assessors, 73 N.J. Law 164, Mr. Justice Swayze, speaking for the Supreme Court, said:
"The proper method of assessment must be determined by the nature of the title of the defendants. If the defendants *Page 270 
have title to the land under water, that land should be included with the land back of the exterior line for solid filling in a single description, or separately assessed by a distinct description. It should not be altogether omitted from the assessment and treated merely as increasing the value of the land back of that line."
And (at p. 167):
"The description may be of importance if it becomes necessary to sell the property of the company for taxes pursuant to section 16 of the act of 1888."
This statement was approved by the Court of Errors and Appeals in 75 N.J. Law 571.
Quite obviously, a comparison of the description in the tax bill or the advertisement of the tax sale with the official tax map would indicate to a prospective purchaser at that sale that only the upland included within the boundaries of lot 6, block 13, section 6, as delineated on that map, and not the lands comprised in the riparian grant, were being exposed to sale, as only those lands were the subject of the assessment.
In Ehren Realty Co. v. Magna Charta Building and LoanAssociation, 120 N.J. Eq. 136, Vice-Chancellor Bigelow said: "The tax sale is based upon the assessment. Nothing passes thereby except what has been assessed."
There, an easement of way appurtenant to a lot immediately in the rear of the lot described in the certificate of tax sale was involved. The way extended across the latter lot. The owner of the dominant tenement was made a party to the bill to foreclose the tax title in an attempt to cut off the way. It was held that the tax sale of the servient tenement and foreclosure of the certificate of tax sale did not extinguish the right of way appurtenant to the adjoining property.
Here neither the lands which were the subject of the riparian grant, nor the easement described in the bill of complaint, were the subject of the assessment; and I conclude that only the lands first described in the bill and designated as lot 6, block 13, section 6, passed by the tax sale certificate, and only those lands can be affected by the decree in this foreclosure suit.
 I will advise a decree accordingly. *Page 271