[File No. 6669.]

P. L. CONLON and MINNIE CONLON, Respondents, v. CITY OF DICKINSON, a Municipal Corporation, Appellant.

(5 NW(2d) 411, 142 ALR 525.)

Opinion filed August 14, 1942. Rehearing denied September 3, 1942.

*J. W. Sturgeon,* for appellant.

*Simpson, Muckoff & Kellogg,* for respondents.

MORRIS, J. This is an appeal from a judgment awarding damages to the plaintiffs in the sum of $1,800 for injury to their premises resulting from the pollution of the Heart River by sewage emptied therein by the defendant City of Dickinson. The case is here for trial de novo.

In 1928, the plaintiff P. L. Conlon purchased the SE$\frac{1}{4}$ and the E$\frac{1}{2}$ of the SW$\frac{1}{4}$ of section 10, township 139, range 96, Stark county, North Dakota for the sum of $9,600. He paid $2,500 in cash and assumed encumbrances for the balance. The purchaser immediately moved onto the premises and occupied the same as a home for himself and family consisting of his wife and three children. The premises were used as a dairy farm. The buildings were located on the SE$\frac{1}{4}$ of section 10. The Heart River, a non-navigable stream, flows across one corner of this quarter section. At the time the premises were purchased, and for sometime thereafter, the river was used for watering the dairy herd.

In 1907, the city of Dickinson constructed a sewage system through which it emptied its sewage into the Heart River at a point about a mile above the farm. As the city grew the amount of sewage increased. In 1930, a second septic tank was added to the system pursuant to plans approved by the State Health Department of the state of North Dakota. Despite this fact the waters of the river continued to be polluted. The condition grew steadily worse from 1928 to 1931. During the latter

year the pollution became so severe that cattle would not drink the water. For a time the cattle were watered from a well. The stench from the sewage in the river interfered materially with the enjoyment of the premises by Conlon and his family. By 1934 conditions became so bad that the dairy business was discontinued. On April 4, 1938, the plaintiff and his wife lost the premises through foreclosure. They continued to reside thereon as tenants up until the commencement of this action on December 21, 1938.

In addition to seeking damages, the plaintiffs also asked that an injunction be granted restraining the city from emptying its sewage into the Heart River. The trial court denied injunctive relief upon the ground that the city was then constructing a new sewage disposal plant which would alleviate the situation. The only question involved in this appeal is whether the plaintiffs or either of them are entitled to damages and if so how much.

The city suggests that it has obtained a right by prescription to empty its sewage into the Heart River by reason of the fact that the system was constructed in the year 1907 and the use of the river as a sewage outlet has continued since that time.

This argument is clearly without merit. The city obtained the right to use the river as a sewage outlet by legislative authority. Section 3697, N. D. Comp. Laws 1913, provides "that any city may empty or discharge its sewerage into any river." In Messer v. Dickinson, 71 ND 568, 3 NW (2d) 241, we held that the authority conferred by the statute was limited by the duty on the part of the city to exercise this authority in a reasonable manner and to take all reasonable precautions against damaging private property.

Under the facts now before us, offensiveness due to pollution of the stream did not appear at all until 1926. The right of prescription, if obtainable under the circumstances shown in this case, could not be acquired in less than twenty years. Sections 5470 and 7362, N. D. Comp. Laws 1913. It clearly appears from the evidence that the condition of the river which is the basis of this action has not existed for a sufficient length of time to give the city a prescriptive right.

The city contends that the plaintiffs may recover nothing because P. L. Conlon for a consideration of $100 executed a certain instrument

known as an easement which was stipulated into the record and reads as follows:

"This easement made and entered into this 23rd day of April, A.D. 1934 by and between Pat Conlon and O. A. Brown, parties of the first part and the City of Dickinson, Stark County, North Dakota a municipal corporation, party of the second part,

"Witnesseth that for and in consideration of the sum of One Hundred Dollars ($100.00) in hand paid to the parties of the first part by the party of the second part, the receipt whereof is hereby acknowledged, the said parties of the first part do hereby give and grant unto the said party of the second part a perpetual easement running with the land hereinafter described to at all times use that certain portion of the Heart River extending across the following described real estate for use by the said party of the second part as a sewer outlet for the sewage system of the party of the second part, and the said parties of the first part hereby waive any right to interfere with the use of said Heart River as a sewage outlet by the said party of the second part, and do hereby waive any right of action that they may have or have had against the said party of the second part in its use of said Heart River as a sewer outlet. That the land across which said easement is granted and conveyed is that part or portion of Section Ten and Eleven (10 and 11) Township One Hundred Thirty-nine (139) Range Ninety-six (96), West of the Fifth P. M., Stark County, North Dakota."

It will be noted that this instrument purports to grant an easement across the land for the use of the Heart River as a sewage outlet and also contains a waiver of any right of action against the city for the use of the river as such outlet. In answer to the city's contention that this instrument bars any recovery, the plaintiffs urge that at least as to the SE 1-4 of section 10, the easement is wholly inoperative and void because this quarter constituted the homestead of the plaintiffs and the wife did not join in the execution of the instrument. The city counters with the proposition that the $SE\frac{1}{4}$ was not the homestead because the entire contiguous farm consisted of a quarter section and an 80-acre tract and no declaration of homestead had been filed pursuant to the provisions of § 5622, N. D. Comp. Laws 1913, and that the giving of the easement

by P. L. Conlon was in effect a selection of the homestead from another portion of the farm than that embraced in the Heart River.

The homestead right in North Dakota is founded upon § 208 of the State Constitution which provides that: "The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law, . . ."

Homestead statutes must be liberally construed with a view to the protection of the homestead. First State Bank v. Fischer, 67 ND 400, 272 NW 752, 110 ALR 878. The object sought by the Constitution and statutes enacted pursuant to the mandate thereof is to protect and preserve the home for the benefit of the family as a whole. Dieter v. Fraine, 20 ND 484, 128 NW 684. The homestead right is not peculiar to the holder of the legal title. As was said in Bremseth v. Olson, 16 ND 242, 112 NW 1056, 13 LRA (NS) 170, 14 Ann Cas 1155:

"It is wholly immaterial in whom the legal title is vested, provided it is the home of the family."

Section 5621, N. D. Comp. Laws 1913 provides that: "Any person who is the head of a family may make a declaration of homestead in the manner provided in the next two sections, but a failure to make such declaration shall not impair the homestead right."

As we have before noted, the homestead right is for the benefit of the whole family. Since the head of the family may not, by a failure to make the declaration provided by § 5621, impair the homestead right it is reasonable to presume that the homestead right existed in 160 acres embraced within the larger 240 acre tract.

The lands herein involved were adjacent to the city of Dickinson. The plaintiffs had resided thereon some six years prior to the execution of the easement. The officials of the city are chargeable from the facts here presented with notice of the homestead rights of the Conlon family. The failure of the record title owner, P. L. Conlon, to file a declaration of homestead will not defeat those rights.

The city contends that by executing the easement and waiver of damages therein contained, P. L. Conlon in effect and in so far as the city is concerned selected other portions of the land owned by him as the homestead and the Conlons cannot now be heard to claim that portion

of the property over which the easement runs as the homestead.

The damages herein sought are not merely to the bed of the river but damages to the entire farm. The evidence shows that the damage is extensive and resulted in the reduction of the rental value of the entire farm. Should the easement be treated as an election on the part of P. L. Conlon to select as the family homestead a portion of the farm not embraced within the bed of the Heart River it would constitute no defense to this action. The homestead right clearly exists in some 160 acres out of the 240 acres in the farm and that right of homestead could not be sold or encumbered by P. L. Conlon without the consent of his wife. He could neither impair it by an easement nor by waiving the right to maintain an action for the recovery of damages to it.

The granting of a perpetual easement or right such as that involved in the instrument executed by P. L. Conlon is such an alienation as to impair the homestead and as to such homestead it is invalid without the signature of the wife. Lindell v. Peters, 129 Minn 288, 152 NW 648, Ann Cas 1916E 1130; Delisha v. Minneapolis, St. P. R. & D. Electric Traction Co. 110 Minn 518, 126 NW 276, 27 LRA (NS) 963; San Francisco v. Grote, 120 Cal 59, 52 P 127, 41 LRA 335, 65 Am St Rep 155; Eng v. Olsen, 99 Neb 183, 155 NW 796. The waiver of any right of action contained in the instrument is of no more validity with reference to the homestead than is the easement itself. To uphold the validity of such a waiver as to the homestead would countenance indirect impairment contrary to the spirit of our homestead laws and would be in derogation of the statutory provisions requiring the signature of the wife to a valid conveyance or encumbrance of the homestead. See Silander v. Gronna, 15 ND 552, 108 NW 544, 125 Am St Rep 616.

The defendant argues that upon the authority of Foogman v. Patterson, 9 ND 254, 83 NW 15, the plaintiffs have waived their homestead right because of failure to make a declaration of homestead as prescribed by § 5621, N. D. Comp. Laws 1913. In that case it was held that where the head of a family owns a section of land with his dwelling house upon one governmental quarter section thereof, and where no homestead has been selected or homestead declaration filed of record as provided by law, and where upon the levy of an execution upon the whole section no claim of exemption is made either by the owner or any member of his family,

no presumption of law arises that the debtor claims as his homestead the particular governmental quarter section upon which his dwelling house stands. That case has been distinguished in Birks v. Globe International Protective Bureau, 56 ND 613, 218 NW 864 and Nelson v. Griggs County, 56 ND 729, 219 NW 225. We think a proper distinction may also be made with reference to the case now before us. We are not here concerned with the levy of an execution on behalf of a creditor. The defendant has damaged the plaintiffs' entire farm in which they are entitled to a homestead of 160 acres. To hold that damages to the homestead cannot be recovered because no declaration has been filed would extend the doctrine of Foogman v. Patterson to a set of facts entirely different from those before the court in that case. The tendency of this court has been to restrict rather than to extend that doctrine. We hold that it is not applicable in this case and that the homestead right has not been waived by a failure to make a selection.

We reach the conclusion that a homestead right existed in the farm on which the Conlons resided unaffected and unimpaired by the easement and waiver executed by P. L. Conlon. If the homestead was damaged by the action of the city in polluting the Heart River such damages are recoverable upon proper proof. Thus, we come to the question of damages as determined by the trial court. The court found that the plaintiffs were entitled to the sum of $1,800 damages. These damages were awarded for injury to the homestead by reason of the pollution of the Heart River during the time the premises were owned by P. L. Conlon within six years prior to the commencement of the action, and also for damages sustained by the plaintiffs as tenants in possession of the premises from April 4, 1938 to December 19, 1938.

The latter period represents the time during which the plaintiffs rented the farm after they had lost title thereto by foreclosure. The plaintiffs are not entitled to damages for this period. When they chose to rent the farm they took it as it then existed and with the handicap imposed by the polluted stream. The record does not show that their leasehold became less tenable or less valuable after the time they rented the premises. Being tenants they only had a leasehold interest and unless this interest was impaired or damaged during its existence they are not entitled to recover therefor. They took the farm as it was at the be-

ginning of the tenure. The rent they may have paid is presumed to have been for the premises as they then existed.

The court found that P. L. Conlon by the easement and waiver which he signed waived any right to recover for damages to that portion of the farm which he owned over and above the homestead. The homestead was 160 acres. The plaintiffs are entitled to recover damages for injury to this homestead during the time that they owned and occupied it as such. The proper measure of damages, where the injury was temporary as in this case, is the reduction in the rental value of the real estate resulting from the injury. Messer v. Dickinson, 71 ND 568, 3 NW (2d) 241, supra; Donaldson v. Bismarck, 71 ND 592, 3 NW (2d) 808.

The testimony shows and the court states in his memorandum opinion that the rental value of the farm for dairying purposes was $3 per acre and that for farming the value was 75c per acre. The evidence further shows that the pollution of the stream reduced the farm to a condition that made it wholly unfit for dairying and that the plaintiffs were obliged to discontinue that business. The difference between the annual rental value for dairying and for general farming purposes is $2.25 per acre. When these damages are applied to the homestead of 160 acres they amount to $360 per year. The testimony shows that from 1928 on, the pollution of the stream grew steadily worse and it became more difficult, unpleasant and expensive to operate the dairy farm. In 1931, the plaintiffs were compelled to cease selling milk to individual customers. Thereafter and until 1934 they sold milk in bulk to a creamery at a greatly reduced price. This action was commenced December 21, 1938. The plaintiffs are entitled to recover such damages as they suffered to the homestead during their period of ownership after December 21, 1932. They were such owners during more than five years of the six preceding the commencement of this action. Damages to the extent of $360 per year for five years amounts to $1,800, the sum awarded by the trial court. The evidence justifies the finding of this sum as damages resulting from injury to the homestead of 160 acres irrespective of injury to other lands owned by P. L. Conlon in excess of the family homestead.

The defendant made a motion for a new trial based upon the settled

statement of the case and appeals from the order denying this motion. Upon the hearing on the motion, the defendant asked the court to take judicial notice of what it contended to be a fact, that is, that the farm involved in this action is within a town plat. It was the theory of the defendant that if the farm was within such a plat the homestead was limited by § 5605, Supplement to Compiled Laws, to a tract not exceeding two acres in extent.

Section 7937, N. D. Comp. Laws 1913 provides that: "No evidence of any fact of which the court will take judicial notice need be given by the party alleging its existence, but the judge upon being called upon to take judicial notice thereof may, if he is unacquainted with such fact, refer to any person, document or book of reference for his satisfaction in relation thereto, or may refuse to take judicial notice thereof unless and until the party calling on him to take such notice produces any such document or book of reference."

Plats of the city of Dickinson and the location of the premises were introduced in evidence but they do not show that the plaintiffs' farm is located within the city limits of the city of Dickinson or within any plat of any town. The trial court in his memorandum opinion upon this point says: "Upon the trial of this case no one questioned but what the SE¼ of 10 was at all times the homestead of plaintiffs, and neither party indicated that this land, which is all farm land, was claimed to be within the corporate limits of Dickinson, or that such fact was a question in this case. Under such conditions, the matter must be called to the attention of the court, and it is my opinion that the first paragraph of § 7937 has particular application in this case."

The trial court did not abuse his discretion in refusing to take judicial notice of the fact contended for by the city. 20 Am Jur 53, Evidence. The record does not contain data that would indicate that this court should take judicial notice of the fact that the farm in question lies within a town plat. The evidence in the record implies that the contrary is true and that the land in question is a farm that has not been platted and is not located within the limits of any municipal corporation. The judgment appealed from is affirmed.

BURR, Ch. J., and BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.

MORRIS, J. (on petition for rehearing). The appellant has filed a petition for rehearing in which it is suggested that this court overlooked the case of Wegner v. Lubenow, 12 ND 95, 95 NW 442. We did not cite this case because it is not in point. The owner of 320 acres of land, all in one tract, executed a lease for 20 acres thereof for 40 years or during the full term of the natural life of the lessees. The court held that "by leasing the twenty acre tract the lessor declared, in effect, that the homestead thereafter to be selected should be carved out of the remaining 300 acres. This we think he had a right to do." Thus the court by inference indicates that the homestead right existed in some portion of the remaining 300 acres.

In the opinion heretofore filed we pointed out that the entire farm was damaged and that the plaintiffs are entitled to a homestead of 160 acres of that farm. If the easement should be treated as an election by P. L. Conlon to select the homestead from another portion of the farm the plaintiffs would still be entitled to recover because the homestead was damaged to the extent of $2.25 per acre even though it be said to exist in some portion of the farm not covered by the easement. Thus the application of the rule in Wegner v. Lubenow does not aid the appellant's defense. That case does not support the contention that the homestead was either waived or lost by failure to file a declaration. The implication is precisely to the contrary. Rehearing denied.

BURR, Ch. J., and CHRISTIANSON, BURKE, and NUESSLE, JJ., concur.