[File No. 7217]

E. J. CONLIN, Appellant, v. OLETA L. METZGER, Bernard J. Westdal, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint, Respondents.

(44 NW2d 617)

Opinion filed November 9, 1950

*Eugene A. Burdick,* for appellant.

*Walter O. Burk,* for respondent.

GRIMSON, J. The plaintiff brings this action to quiet title to the North 10 feet of Lots 7 and 8 in Block 7 of the town (now City) of Williston, Williams County, North Dakota. He claims absolute ownership. The defendants claim an easement for the use of said property as a way of access to their adjoining properties. The case was tried in District Court upon a written stipulation of facts.

It appears therefrom that on the 4th day of May 1938 the County Auditor of Williams County, upon due proceedings for the nonpayment of the real estate taxes on said North 10 feet of Lots 7 and 8 for the years 1909 to 1931 inclusive, issued a tax deed to Williams County for said property. Williams County duly sold the said property to the plaintiff on August 27, 1945. The plaintiff also obtained a quit claim deed from the former owner to fortify his title in case the tax deed should be attacked. However, no attack is made on these tax proceedings and the tax deed is concededly valid.

The stipulation further shows that this property constitutes a strip 10 feet wide across said Lots 7 and 8. The defendants

own the adjoining Lots 9 and 10, Block 7, town (now City) of Williston. They and their respective predecessors in interest and their respective invitees made prescriptive use over, across and upon said strip of land as a way of access to their own adjoining property, "which said prescriptive use resulted in establishing a common easement of way sometime after the year 1909 and prior to the 4th. day of May 1938, which said common easement of way also was appurtenant to their said respective real property as the dominant tenements." Said prescriptive use has continued to the present time.

The sole question raised upon the trial is whether under the evidence in this case the valid tax deed obtained by Williams County in 1938 destroyed the prescriptive easement for right of way obtained by the defendants. The District Court found for the defendants and plaintiff appeals.

On this question there seems to be two lines of authority. The authorities are collected in an annotation in 168 ALR 529 and it is said that the majority of cases hold that the sale, for taxes, of land which is subject to an easement or servitude or restrictive covenant does not have the effect of extinguishing such easement or servitude.

A study of the authorities leads to the conclusion that the division is based on the question of what is included in the assessment on which the tax title is based. In both lines of authority the question is decided upon the basis of the assessment. Only the interest properly assessed can be sold. Tintic Undine Mining Co. v. Ercanbruck et al. 93 Utah 561, 74 Pac2d 1184. In the majority holdings it is pointed out that a tract of land, called the dominant tenement, (Sec. 47–0503 NDRC 1943) may have an appurtenance, (Sec 47–0106 NDRC 1943), such as a right of way, over an adjoining tract which becomes a servitude or burden upon that piece of land called the servient tenement. (Sec 47–0504 NDRC 1943.) The value of the dominant tenement is increased by having this way of access to it. So the value of the servient tenement is reduced because of the burden of that way upon it. Then it is said that the value to the dominant tenement of the appurtenant right of way is added to the value of the dominant tenement itself by the assessor and in-

cluded in the total assessment against that dominant tenement. Likewise the assumption is made that the decrease in value of the servient tenement caused by the burden of the right of way across it is deducted from its total value so that only the remaining value of the servient tenement is assessed. Then it is held that the tax lien upon this servient tenement is only on that lessened value and the title conveyed by the tax deed is only for the servient tenement and does not include the easement for right of way across it.

As a reason for such division in the assessment of a tract of land it is argued that if a property right, such as an appurtenant right of way, belonging to and assessed with the dominant tenement, is sold and destroyed by a tax sale of the servient tenement then there would be a taking of property from the owner of the dominant tenement without due process of law. Further it is said the owner of the dominant tenement who pays the taxes on his property including the value of the appurtenant right of way would, in order to protect his easement, also have to pay taxes on the servient tenement although the value of the easement is excluded therefrom. That, it is said, would amount to double taxation. Hays v. Gibbs, 110 Utah, 54, 169 Pac2d 781, 168 ALR 513; Jackson v. Smith, 153 App Div (NY) 724, 138 NYS 654; Tax Lien Co. v. Schultz, 213 NY 9, 106 NE 751, LRA1915D, 1115, Ann Cas 1916C, 636; Northwestern Improvement Co. v. Lowry, 104 Mont 289, 66 Pac2d 792; Ross v. Franko, 139 Ohio St 395, 40 NE2d 664; City of Longbranch v. Highlands, L. B. & S. B. Co., 134 NJ Eq 266, 35 A2d 22; Alamogordo Imp. Co. v. Prendergast, 43 NM 245, 91 Pac2d 428; Crawford et al v. Senosky, 128 Ore 229, 274 Pac 306, 40 ALR 1523, 110 ALR 612, 122 ALR 1285, 168 ALR 529.

On the other hand the minority cases hold that proceedings on the sale of property for nonpayment of taxes are strictly in rem; that an easement is included in the res; that the assessment is made against the land itself as an entirety and not against scattered and divided interests therein; that the purchaser of a tax title gets complete, paramount title from the sovereign state free from easements or burdens. Hill v. Williams, 104 Md 595, 65 A 413; Wolfson v. Heins, 149 Fla 499, 6

So2d 858; In Henson v. Carr, 66 Wash 81, 118 Pac 927, it is held that:

"Otherwise the owner of real estate may grant an easement or leasehold and surrender possession of the real estate to such grantee, and, upon foreclosure of the tax lien by the state, the purchaser would acquire only the fee, subject to the easement or 'lease, which would destroy the priority of the tax lien."

In Nedderman et al. v. City of Des Moines et al. (Beck Intervenor), 221 Iowa 1352, 268 NW 36, it is held:

"For purposes of taxation assessment of land is made against the land itself and not against divided titles."

In Harmon v. Gould, 1 Wash2d 1, 94 Pac2d 749, it was held that the foreclosure of a tax lien being a proceeding in rem vests the purchaser new title, superior to any possessory right however exclusive or adverse. One reason there given is that "The collection of taxes would be seriously hindered if a taxing authority be required to examine each tract of land for possible easements based upon prescriptive or other claims not of record, concerning which it might well be exceedingly difficult to obtain information." See also Tamblin v. Crowley, 99 Wash 133, 168 Pac 982; Magnolia Petroleum Co. v. Moyle, 162 Kan 133, 175 Pac2d 133; Jackson v. Ashley, 189 Miss 818, 199 So 91.

In many of the cases holding with the majority rule it appears that the easements and servitudes that were held to prevail over tax titles were established against the property prior to the assessment on which the tax title was based. This was pointed out in Hays v. Gibbs, supra. See also Alamogordo Implement Co. v. Hennessee, 56 Pac2d 1127, 40 NM 162; N. W. Improvement Co. v. Lowry, 104 Mont 289, 66 Pac2d 792, 110 ALR 605; Blenis v. Utica Knitting Co. 130 NYS 740; Crawford v. Senosky, supra; Union Falls Power Co. v. Marinette Co. 238 Wis 134, 298 NW 598, 134 ALR 958; Tidewater Pipe Co. v. Bell, 280 Penn 104, 124 A 351, 40 ALR 1516.

To reach a decision in the case at bar it will be necessary to determine on what assessment the plaintiff's tax deed is based and what it includes. If the evidence shows the assessment was based against the land in its entirety before any easement attached and that the separate lien thereof continued until the

tax sale, then under both lines of authority the tax deed passed a complete title to the land. In that event a determination as to which line of authority should be adopted in this state is not involved in the decision. of the instant case.

The stipulated facts show that the easement involved was obtained sometime after the year 1909 and before the 4th. day of May 1938. It takes 20 years prescriptive use to obtain an easement. Sections 47–0602 and 28–0104 NDRC 1943. Title by prescription relates back to the inception of the use. 1 Am Jur 797, Sec 13. Under the stipulation of facts the prescriptive use might have begun as late as the 4th. day of May 1918 and not earlier than the 1st day of January 1910. The tax title was obtained upon the sale of delinquent taxes for the years 1909 to 1931 inclusive. For at least one year, 1909, and possibly as much as nine years this tract was, therefore, assessed before any prescriptive use commenced. Furthermore, it is safe to assume that while the easement was being obtained no reduction was made in the assessed valuation of the servient tenement nor increased as to the dominant tenement. During that time no easement had actually come into existence. The title relates back not for taxation purposes but to make the use that had been made of the property lawful. No double taxation or the taking of property without due process of law is actually involved.

Real property in this state shall be listed and assessed every odd numbered year with reference to its value on April 1st. of that year. Sec 2093, 1925 Suppl RCND 1913, Sec 57–0211 NDRC 1943. All property subject to taxation based on the value thereof shall be assessed at its true and full value in money. Each description shall be valued by itself and at such sum or price as the assessor believes the same to be fairly worth in money, exclusive of improvements and the value of all taxable improvements and structures thereon. Sec. 1512 RCND 1905, Sec 57–0227 NDRC 1943. The assessor shall by actual examination determine the true and full value of each tract. Sec 1517 RCND 1905, Sec. 57–0234 NDRC 1943.

Under the law in force in 1909 real estate taxes became due Dec. 1st. of the year in which the tax was levied and delinquent

March 1st. following. Sec 1571 RCND 1905. All lands on which the taxes for the preceding year remained unpaid were sold on the first Tuesday in December of the following year. Sec. 1574 RCND 1905. The County Auditor issued the purchaser a certificate of such sale. Sec 1577 RCND 1905. The owner of a tax sale certificate had the right to pay the delinquent taxes upon the property covered thereby for any subsequent year and receive a "subsequent tax sale certificate." If that subsequent tax was not paid he could proceed to get separate title on such certificate after three years from the date thereof. Chap 298 SL 1931, Sec 57-2422 NDRC 1943. A tract bid in for the county for lack of bidders was to be assessed and taxed like others until the period of redemption expired but was not again to be offered for sale for such delinquent taxes while the county held such certificate. Sec 1576 RCND 1905. Subsequent certificates were to be issued to the county for each delinquent tax. Chap 298 SL 1931. If not redeemed within three years from the date of the certificate of sale such tracts, after due notice of redemption had been given, were to be sold as the county commissioners might direct. Sec. 1587 RCND 1905. In 1925 the legislature provided that the owner of any piece or parcel could pay the taxes for which the land was originally sold at tax sale, together with accrued interest and penalty thereon at any time without making payment of any subsequent taxes and could also pay the subsequent taxes for the next succeeding year or years. Sec. 2197, 1925, Suppl 1913 CLND. These or similar provisions of the law were continued and were in force until after the sale of this land in 1945.

Thus it will be seen that the original sale of lands for a delinquent tax is carried through all the proceedings so that the lien thereof is preserved separately no matter how many subsequent tax sales have been had.

Therefore, whatever rights the county obtained in the land in question under the assessment for the 1909 tax were separately carried forward and included in the tax deed of May 4, 1938. The title Williams County obtained by its tax deed related back to the 1909 assessment of the property.

In 1909 this prescriptive easement the defendants now claim did not exist. The prescriptive use had not even commenced. No servitude had been carved out of the property. The assessment then was necessarily against the property in its entirety. The lien of the tax based thereon covered the total value of the property. That lien was perpetual and paramount against the defendants. Sec 57–0240 NDRC 1943. "The term 'paramount' means superior, pre-eminent, the highest in nature and rank, and establishes a rule of precedence between the state, in its levy of taxes, and private individuals." State v. Divide County, 68 ND 708, 283 NW 184. The foreclosure of that lien by the tax sale effectively cut off the subsequent easement of the defendants. The deed issued by Williams County to the plaintiff gave him a new and complete title in the land under an independent grant from the sovereign authority. Baird v. Stubbins, 58 ND 351, 226 NW 529, 65 ALR 1009; Peterson v. Reishus, 66 ND 436, 266 NW 417, 105 ALR 724; Nelson v. Murton, 68 ND 108, 277 NW 390.

The decision of the District Court is reversed and the case remanded with directions to render judgment for the plaintiff.

NUESSLE, C. J., and CHRISTIANSON, MORRIS and BURKE, JJ., concur.