Robert J. KNOFF, Roger E. Knoff, Judith
A. Pokrzywinski, Carole R. Born, Ray-
mond E. Knoff, Jr., and Thomas Heine,
Plaintiffs, Appellants and Cross-Appel-
·lees,

v.

AMERICAN CRYSTAL SUGAR COM-
PANY, Defendant, Appellee and
Cross-Appellant.

Civ. No. 10928.

Supreme Court of North Dakota.

Jan. 7, 1986.

**314**

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for plaintiffs, appellants and cross-appellees; argued by Shirley A. Dvorak.

McConn, Fisher & Thune, Grand Forks, for defendant, appellee and cross-appellant; argued by Patrick W. Fisher.

GIERKE, Justice.

Robert J. Knoff, Roger E. Knoff, Judith A. Pokrzywinski, Carole R. Born, and Raymond E. Knoff, Jr., ["Knoffs"] and Thomas Heine appeal from a district court judg-

ment[1] dismissing their claims against American Crystal Sugar Company ["American Crystal"]. American Crystal has filed a cross-appeal. We affirm in part, reverse in part, and remand for further proceedings.

During the summer of 1964, American Crystal constructed three waste-water lagoons on land adjacent to Raymond Knoff's farmland. The Knoffs allege that in the early 1970's Raymond Knoff began experiencing crop losses on a strip of land immediately adjacent to the American Crystal lagoons. In 1978, Raymond Knoff leased the farmland to Thomas Heine. Knoff informed Heine of his past difficulties with the property near the lagoons. Heine farmed the land continuously from 1978 through the time of trial.

Knoff and Heine commenced this action in June 1983, alleging that the land had been damaged by American Crystal's placement of its waste-water lagoons on the adjacent property. The complaint alleged that the lagoons were negligently constructed and maintained, and that they constituted a private nuisance. Knoff and Heine sought damages of $300,000 and a permanent injunction prohibiting further use of the lagoons. Following Raymond Knoff's death in December 1983, his children were substituted as plaintiffs.[2]

The action was tried to a jury. During the course of the plaintiffs' case, the court dismissed Heine's nuisance claim. At the close of the plaintiffs' case, the trial court granted American Crystal's motion for a directed verdict on the Knoffs' nuisance claim and on Heine's negligence claim. The Knoffs' negligence claim was submitted to the jury. The jury returned its verdict finding no liability. These appeals followed.

1. Both the Notice of Appeal and the Notice of Cross-Appeal claim that appeal is taken from the judgment entered on January 17, 1985. A review of the record discloses that no judgment was entered on that date. The judgment was entered on January 22, 1985; the court's order for judgment was dated January 17, 1985. We deem the erroneous listing of the date of judgment appealed from to be a clerical error, and

## I.

The trial court concluded that American Crystal's activities constituted an "agricultural operation" as defined in Section 42–04–01, N.D.C.C., and that its waste-water lagoons therefore could not constitute a nuisance under Section 42–04–02, N.D.C.C. The Knoffs and Heine contend that the court erred in applying Chapter 42–04 to American Crystal's activities.

Section 42–04–02, N.D.C.C., provides:

"*42–04–02. Agricultural operation deemed not nuisance.* An agricultural operation is not, nor shall it become, a private or public nuisance by any changed conditions in or about the locality of such operation after it has been in operation for more than one year, if such operation was not a nuisance at the time the operation began; except that the provisions of this section shall not apply when a nuisance results from the negligent or improper operation of any such agricultural operation."

"Agricultural operation" is defined in Section 42–04–01, N.D.C.C.:

"*42–04–01. 'Agricultural operation' defined.* As used in this chapter, '*agricultural operation*' means the science and art of production of plants and animals useful to man, by a corporation as provided in chapter 10–06, a partnership, or a proprietorship, *and including*, to a variable extent, *the preparation of these products for man's use and their disposal by marketing or otherwise,* and includes horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, and any and all forms of farm products, and farm production." [Emphasis added.]

we will treat the appeal and cross-appeal as being from the judgment entered on January 22, 1985.

2. In addition, Robert Knoff and Roger Knoff were added as plaintiffs in their capacities as the personal representatives of their father's estate.

American Crystal concedes that it does not meet the requirements of a corporation allowed to engage in farming pursuant to Chapter 10–06, N.D.C.C. *See* § 10–06–07, N.D.C.C.[3] However, American Crystal contends that Section 42–04–01 does not restrict "agricultural operation" status to only those corporations which meet the prerequisites of Chapter 10–06, but rather creates two distinct types of activities which qualify as agricultural operations: (1) *production* of plants and animals, which may be engaged in by a proprietorship, a partnership, or a Chapter 10–06 corporation, and (2) *preparation and marketing* of these products for man's use, which may be engaged in by any entity. In effect, American Crystal is asking us to construe the term "including" to mean "and in addition."

█ Words used in a statute are to be understood in their ordinary sense. Section 1–02–02, N.D.C.C. "Include" has been defined as " . . . to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate. . . ." Webster's Third New International Dictionary (1971). We conclude that preparation and marketing of agricultural products fall within the definition of "agricultural operation" only insofar as they are encompassed within "the science and art of production of plants and animals" by a proprietorship, a partnership, or a corporation which meets the requirements of Chapter 10–06, N.D.C.C. Thus, a corporation which does not qualify under Chapter 10–06 is not entitled to invoke the protections of Section 42–04–02, N.D.C.C.

We further note that the interpretation urged by American Crystal would create an extremely broad category of activities which would be protected by Chapter 10–06. If carried to its logical conclusion, every manufacturing process and commercial transaction which to some extent involves the preparation or marketing of products devolving from plants or animals would fall within the statute. We do not believe that it was the intent of the Legislature when it created protections for "agricultural operations" to encompass remote preparation and marketing of such products by large national corporations. It would be the ultimate irony to construe the statute to prohibit an action by a North Dakota family farmer against a large corporation for damage to his land.

American Crystal contends that we have previously applied the statute under similar circumstances in *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Association,* 337 N.W.2d 427 (N.D.1983). However, in *Harmon Motors* we did not apply Chapter 42–04 to the situation presented; we merely looked at the general legislative purpose evidenced by its passage in resolving an issue of "coming to the nuisance." We looked to the statute only as an indication that the Legislature considered agriculture and related businesses to have a positive effect on the state. *See Harmon Motors, supra,* 337 N.W.2d at 431–432. Our opinion in *Harmon Motors* should not be read as an indication that all farm-related corporations are to be afforded the protections of Chapter 42–04, N.D.C.C.

We hold that American Crystal's activities are not "agricultural operations" under Section 42–04–01, N.D.C.C., and are not protected by the provisions of Chapter 42–04.

**3.** Section 10–06–07, N.D.C.C., provides in pertinent part:

> "*10–06–07. Corporation allowed to engage in the business of farming or ranching—Requirements.* This chapter does not prohibit a domestic corporation from owning real estate and engaging in the business of farming or ranching, if the corporation meets all the requirements of chapters 10–19.1, 10–22, and 10–23 not inconsistent with this chapter. The following requirements also apply:

> "1. The corporation must not have more than fifteen shareholders.
> "2. Each shareholder must be related to each of the other shareholders within one of the following degrees of kinship or affinity: parent, son, daughter, stepson, stepdaughter, grandparent, grandson, granddaughter, brother, sister, uncle, aunt, nephew, niece, great-grandparent, great-grandchild, first cousin, or the spouse of a person so related."

■ American Crystal further contends that, even if Chapter 42–04 is inapplicable, it cannot now be found liable to the Knoffs and Heine on a nuisance theory because the jury found no liability based upon negligence. We have previously distinguished between nuisance and negligence principles, and it is well settled that a nuisance may be created wholly without negligence. *Jamestown Plumbing & Heating Co. v. City of Jamestown,* 164 N.W.2d 355, 361 (N.D.1968); *Thorson v. City of Minot,* 153 N.W.2d 764, 769 (N.D.1967); *Kinnischtzke v. City of Glen Ullin,* 79 N.D. 495, 510, 57 N.W.2d 588, 596 (1953). As we stated in *Kinnischtzke, supra,* 79 N.D. at 510, 57 N.W.2d at 596:

"Negligence may or may not result in the creation of a nuisance, and, on the other hand, a nuisance may be created wholly without negligence. The distinction is set out in 39 Am.Jur., Nuisances, Section 4, thus:

" 'liability for negligence is based on a want of proper care, while, ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid such injury.' "

Proof of absence of negligence is not a defense to an action grounded in nuisance, because the focus is upon the condition created and not upon the exercise of care or skill by the defendant:

"A nuisance is a condition, and not an act or a failure to act on the part of the person responsible for the condition. If the wrongful condition exists, and the person charged therewith is responsible for its existence, he is liable for the resulting damages to others although he may have used the highest possible degree of care to prevent or minimize the deleterious effects. In determining whether a defendant's conduct is 'unreasonable' in a nuisance case, the test is not unreasonable risk or foreseeability as these terms are used in negligence cases. Recovery in an action for a nuisance cannot be defeated by showing that there was no negligence on the part of the defendant, or that the plaintiff was guilty of contributory negligence." 58 Am.Jur.2d *Nuisances* § 34 (1971) [Footnotes omitted.]

■ Section 42–01–01, N.D.C.C., defines "nuisance" in pertinent part:

"*42–01–01. Nuisance—Definition.* A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

\* \* \* \* \* \*

4. In any way renders other persons insecure in life or in the use of property."

Although Section 42–01–01, N.D.C.C., defines nuisance in part as "omitting to perform a duty," the type of "duty" which gives rise to a claim of nuisance may differ from the "duty" implicated in a negligence action:

"To render a person liable on the theory of either nuisance or negligence there must be some breach of duty on his part, but liability for negligence is based on a want of proper care, while ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid the injury. The creation or maintenance of a nuisance is a violation of an absolute duty, the doing of an act which is wrongful in itself, whereas negligence is a violation of a relative duty, the failure to use the degree of care required under particular circumstances in connection with an act or omission which is not of itself wrongful. Nuisance is a condition and not an act or failure to act, so that if a wrongful condition exists, the person responsible for its existence is liable for resulting damage to others." 58 Am.Jur.2d *Nuisances* § 3 (1971) [Footnotes omitted.]

■ American Crystal contends that our decision in *Harmon Motors, supra,* implies that only a breach of a duty imposed by statute or regulation will support an action

for nuisance. American Crystal has, however, read our holding in *Harmon Motors* much too broadly. We merely noted that Harmon Motors had failed to establish any law or regulation making GTA's activities unlawful, and which would meet Harmon Motors' "heavy burden" of establishing liability after it had come to the alleged nuisance. *See Harmon Motors, supra,* 337 N.W.2d at 432–433. *Harmon Motors* does not stand for the proposition that only a violation of a statute or regulation will constitute breach of a duty which gives rise to an action based upon nuisance.

We hold that the trial court erred in holding that American Crystal's lagoons could not constitute a nuisance pursuant to Chapter 42–04, N.D.C.C. The Knoffs and Heine are entitled to a new trial on their nuisance claims.

## II.

■ At the close of the plaintiffs' case, the court directed a verdict against Heine on his negligence claim. The trial court held that Heine had failed to present evidence which would allow the jury to calculate damages under the appropriate measure, as set out in *Conlon v. City of Dickinson,* 72 N.D. 190, 5 N.W.2d 411 (N.D. 1942). Heine contends that the trial court erred in directing a verdict on his negligence claim.

We have often reiterated the applicable standards which trial courts must apply in disposing of a motion for a directed verdict pursuant to Rule 50(a), N.D.R.Civ.P. A motion for a directed verdict should not be granted unless the moving party is entitled to a judgment as a matter of law. In making its determination on the motion, the court must view the evidence in the light most favorable to the party against whom the motion is made. A mere scintilla of evidence in favor of the opposing party does not preclude the granting of the motion. The ultimate question is whether there is evidence upon which the jury could properly find a verdict for the party

against whom the motion is made. A directed verdict is granted as a matter of law and is fully reviewable on appeal. *See, e.g., McCarney v. Knudsen,* 342 N.W.2d 380, 382 (N.D.1983).

The trial court correctly noted that the appropriate measure of damages for tortious injury to a tenant's interest in real property is set out in *Conlon, supra,* in which this Court held that a tenant may only recover for the impairment to his leasehold occurring during its existence:

"When they chose to rent the farm they took it as it then existed and with the handicap imposed by the polluted stream. The record does not show that their leasehold became less tenable or less valuable after the time they rented the premises. Being tenants they only had a leasehold interest and unless this interest was impaired or damaged during its existence they are not entitled to recover therefor. They took the farm as it was at the beginning of the tenure. The rent they may have paid is presumed to have been for the premises as they then existed."

*Conlon, supra,* 72 N.D. at 199–200, 5 N.W.2d at 415. Thus, because a substantial portion of the land was already damaged when Heine first leased it in 1978, he was entitled to recover only the increase in damages which occurred after his tenancy commenced. The trial court concluded that Heine failed to present sufficient evidence from which the jury could determine what portion of his total crop losses was attributable to any increase in damaged acreage which occurred after the commencement of his tenancy.

■ In order to justify an award, the party seeking recovery must furnish to the trier of fact data sufficient to determine damages without resort to mere speculation or conjecture. *Pfliger v. Peavey Co.,* 310 N.W.2d 742, 747 (N.D.1981); *Johnson v. Monsanto Co.,* 303 N.W.2d 86, 95 (N.D. 1981). Based upon the record before us on appeal,[4] we conclude that Heine failed to

4. Heine contends that Exhibit 42, which was     initially admitted into evidence but subsequent-

present sufficient data to support his claim for damages. The evidence presented by Heine showed his total crop loss for each year, including losses occurring on that portion of the land which was already unproductive when Heine first leased the land. There is no evidence which would have allowed the jury, without resort to speculation or conjecture, to determine what percentage of the total crop loss was attributable to any increase in damaged acreage occurring during his tenancy. We therefore conclude that the trial court did not err in directing a verdict in favor of American Crystal on Heine's negligence claim.[5]

## III.

On its cross-appeal, American Crystal contends that the trial court erred in refusing to permit John Botsford to testify. Botsford had been hired by Jon Brosseau, the attorney for the estate of Raymond Knoff, to appraise the Knoff farmland. Botsford's appraisal was used to prepare the federal estate tax return.

American Crystal sought to call Botsford as an expert witness to testify regarding his opinion of the value of the Knoff land.

The trial court prohibited Botsford from testifying on the ground that Botsford was a representative of an attorney and his testimony was therefore privileged pursuant to the lawyer-client privilege of Rule 502, N.D.R.Ev.

Rule 502(b), N.D.R.Ev., provides in pertinent part:

> *"(b) General Rule of Privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, ... or (5) among lawyers and their representatives representing the same client."

It is undisputed that Botsford, who was hired by Brosseau, was a "representative of the lawyer" pursuant to Rule 502(a)(4), N.D.R.Ev., and that Brosseau's client was the estate of Raymond Knoff.

In applying Rule 502, we are cognizant that rules of privilege must be narrowly construed because they are by nature in derogation of the search for truth. *See*

---

ly withdrawn by the trial court, supports his claim for damages under *Conlon, supra.* Exhibit 42, however, has not been included in the record transmitted to this Court. Certainly a party which attempts to rely on documentary evidence should see to it that the relevant documents appear in the record. Although we could on our own motion direct that a supplemental record be certified and transmitted, *see* Rule 10(h), N.D.R.App.P., we decline to do so in this case because it appears from the statements of counsel and the testimony concerning Exhibit 42 that the exhibit showed only total crop losses without demonstrating what percentage was attributable to an increase in damaged acreage occurring after the commencement of Heine's tenancy.

We further note that Heine does not argue on appeal that withdrawal by the trial court of the previously admitted exhibit was erroneous. Thus, Heine cannot argue that the exhibit supports his claim for damages when it is not in evidence and he has not on appeal challenged its exclusion.

**5.** As previously discussed, the trial court's holding that American Crystal is afforded the protec-

tions of Chapter 42–04, N.D.C.C., was erroneous. Therefore, it was error for the court to dismiss Heine's nuisance claim.

The trial court dismissed Heine's nuisance claim during the plaintiffs' case-in-chief, before Heine had testified. Heine then testified relative to his negligence claim and, at the close of the plaintiffs' case, the court directed a verdict on Heine's negligence claim. Although it may be argued that Heine's failure to produce evidence to allow the jury to calculate damages on his negligence claim should now preclude him from receiving a new trial on his nuisance claim, we will not speculate on what additional testimony may have been presented had Heine been allowed to proceed on his theories of recovery. A party should be afforded the opportunity to present and shape his case based upon all relevant and appropriate legal theories raised by his pleadings. *Cf. Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338, 345–346 (N.D.1984). When the plaintiff's opportunity to present his theory of the case is prematurely halted, as in this case, we will not engage in conjecture regarding what might have occurred had he been afforded an opportunity to fully present his case.

*State v. Red Paint*, 311 N.W.2d 182, 185 (N.D.1981). The purpose of the attorney-client privilege is to provide every client a freedom from apprehension in discussing personal matters with his attorney and to encourage the client to freely communicate with his attorney without fear of disclosure. *Bolyea v. First Presbyterian Church of Wilton*, 196 N.W.2d 149, 153 (N.D.1972) (discussing previous attorney-client privilege statute). Thus, it is the confidential communications of the client which are protected from disclosure.

■■■ The trial court has failed to distinguish between confidential communications, which are privileged, and underlying facts, which are not. The United States Supreme Court has articulated this distinction in *Upjohn Co. v. United States*, 449 U.S. 383, 395–396, 101 S.Ct. 677, 685–686, 66 L.Ed.2d 584, 595 (1981):

> "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>
>> " '[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.' *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (ED Pa. 1962)."

Commentators have discussed the application of this distinction when a party seeks to examine an expert who has been retained by an opposing party or his attorney:

> "In the case of the expert who is not a witness and who qualifies as a representative of the lawyer, a distinction must be drawn based on how his information is obtained. The attorney-client privilege protects only communications to the attorney; it does not immunize the knowledge of the client or the knowledge of the attorney obtained from sources other than confidential communications by his client.... Applied to the expert situation, this means that the expert's observations, conclusions and information derived from sources other than the client's communication constitute the expert's knowledge, which, like the client's knowledge and the attorney's knowledge, is not privileged." 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 503(a)(3)[01] (1985) (footnotes omitted).
> "Even an attorney, if he were an eyewitness to an event relevant to the merits of the case, could not refuse, by virtue of his employment, to testify as to his knowledge. The information did not come to him in the form of a confidential communication from his client. The same is true of an expert who obtains first-hand knowledge of facts during his investigation.
> "[T]he attorney-client privilege should be applied only to protect communications, not facts. Experts' reports are communications which may fall within the scope of the privilege. But the experts' observations and conclusions themselves, whether or not contained within a report, and even if based to some extent on communications of the client, are facts which, if relevant, constitute evidence. Therefore, to apply the privilege to prevent an expert from testifying as to his analysis may completely preclude disclosure of evidence and thus be tantamount to the suppression of an eyewitness...."

Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan.L.Rev. 455, 468–469 (1962).

The trial court in the instant case has in effect "suppressed an eyewitness." The testimony sought in this case was Botsford's opinions and conclusions on the val-

ue of the Knoff land, not the content of Botsford's communications with Brosseau or the client. In a similar case, the Supreme Court of California has held that an expert's appraisal of land is not privileged:

"If it be conceded that the appraiser was an agent of the state, and that his communications to the state's attorney were thus privileged, nevertheless defendant did not seek a disclosure of that communication. She sought only the opinion of the expert as to the fair market value of property he had appraised. The inquiry goes only to matters of the appraiser's subjective knowledge, as distinguished from his disclosures to plaintiff's counsel. This knowledge, in and of itself, is not privileged, nor does it acquire a privileged status merely because it may have been communicated to the attorney...." *People ex rel. Department of Public Works v. Donovan,* 57 Cal.2d 346, 354–355, 369 P.2d 1, 5–6, 19 Cal.Rptr. 473, 477 (1962).

We agree with the reasoning of the Supreme Court of California. Botsford's opinion regarding the value of the Knoff land is a matter of subjective knowledge which is not protected by the attorney-client privilege. The trial court erred in excluding Botsford's proffered testimony on the value of the Knoff land.[6] On retrial, Botsford's testimony on his opinion of the value of the Knoff land is not to be excluded on the basis of the attorney-client privilege.

That portion of the judgment dismissing the appellants' negligence claims is affirmed; that portion of the judgment dismissing the appellants' nuisance claims is reversed; and the cause is remanded for trial on the nuisance claims.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

**6.** Because we conclude that Botsford's testimony regarding the value of the land is not protected by the attorney-client privilege, we need not

address American Crystal's alternative contention that the alleged privilege was waived.