Alphonse NAGEL, Plaintiff
and Appellant,

v.

EMMONS COUNTY NORTH DAKOTA
WATER RESOURCE DISTRICT and
Emmons County, North Dakota, by and
through its Board of County Commis-
sioners, Defendants and Appellees.

Civ. No. 900429.

Supreme Court of North Dakota.

July 31, 1991.

Rauleigh D. Robinson, Bismarck, for plaintiff and appellant.

Charles S. Miller, Jr., Fleck, Mather & Strutz, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

Alphonse Nagel appealed from a judgment of the district court for Emmons County dismissing his complaint in which he sought to enjoin the defendants [1] from causing his land to be flooded and to collect money damages for harm to his land from previous flooding. We hold that the County acquired a flowage easement by prescription and we affirm the judgment of the district court.

Alphonse Nagel is a landowner in Emmons County, North Dakota. Immediately north of his property lies an east-west road which was upgraded and improved by Emmons County sometime between 1963 and 1965. At the same time, Emmons County upgraded a north-south road which terminated just north of Nagel's property, forming a "T" intersection with the east-west road. To the east of the intersection the County installed a 24–inch culvert running north-south under the east-west road.

Prior to the improvements made on the roads, surface water which accumulated in a drainage area north of Nagel's property would flow in a westerly direction across the north-south road to a grass waterway which was also located north of his property. As a result of the improvements, however, the natural drainage pattern was altered, causing the surface water to flow from the drainage area south through the culvert on to Nagel's property. Nagel admitted that, within one week of completion of the improvement project in 1965, he had actual knowledge of:

a. The work which had been completed and the location of the culvert;

b. The fact that the drainage pattern had been altered as a result; and

c. The fact that his property would suffer damage and be burdened by excess water as a result of the change in the drainage pattern.

In September 1989, approximately 24 years after the natural drainage pattern had been altered, Nagel filed this action in the district court for Emmons County. Nagel testified that with every flow since 1965 an excess of water caused some damage to his property, but that the first substantial damage occurred in 1984. Nagel sought a mandatory injunction against the defendants, prohibiting the flooding of his lands. Nagel also sought monetary compensation for the damage resulting from the flooding since 1986.

After a trial without a jury, the trial court ordered judgment against Nagel. The court concluded that Emmons County had acquired a flowage easement by prescription which bars Nagel's action. Nagel challenges that conclusion and the resulting implications on this appeal. We note that conclusions of law are fully reviewable on appeal. *See Matter of Estate of Zent*, 459 N.W.2d 795 (N.D.1990).

In challenging the trial court's conclusion that he is barred from taking this action, Nagel relies heavily on *Rynestad v. Clemetson*, 133 N.W.2d 559 (N.D.1965). In *Rynestad*, this court held:

"Improperly draining surface water onto the land of another is an injury for which action may be maintained by the person having title to, or possession of, the property onto which the water is drained, at the time the injury was caused. If damages are recurrent or continuing, the remedy is by successive actions from time to time so long as such improper draining continues and the noxious condition is maintained." [Citation omitted]

While *Rynestad* may be an accurate statement of the law, Nagel's reliance on that case begs the question of the effect of Emmons County's prescriptive use of Nagel's land. Unlike *Rynestad*, this case involves the consideration of the possessory interest of the party against whom the action is brought, i.e. Emmons County. We therefore examine the effect of the County's prescriptive use on Nagel's right to maintain this action.

Nagel does not contest whether the right to flood another's land may be obtained by easement, *see* Section 47–05–01(10), NDCC [The right of flooding may

1. Defendant Emmons County North Dakota Water Resource District was dismissed from this action by the trial court and is not a party to this appeal.

be attached to other land], but rather, whether that right may be obtained in this state by prescriptive use. An easement by prescription is a common law concept and has been defined as "the creation of incorporeal interests by the lapse of time." Restatement of Property, Servitudes Ch. 38, Introductory Note (1944). Our statutes do not provide the specific elements for the creation of a prescriptive easement, but do acknowledge by implication the possibility of obtaining one. *See* Section 47–05–07, NDCC [Outlining the extent of a servitude by the nature of the enjoyment by which it was acquired]; Section 47–05–12, NDCC [Governing the extinguishment of a servitude acquired by enjoyment]; Section 47–06–02, NDCC [Fixing the time by which a right by prescription shall be acquired].[2] Similarly, our caselaw does not discuss the specific requirements for acquiring a prescriptive easement, but does acknowledge the possibility of acquiring such an easement. *See Conlin v. Metzger*, 77 N.D. 620, 44 N.W.2d 617 (1950) [The court concluded that any prescriptive easement obtained by the defendant was destroyed by a valid tax deed subsequently issued]; *Conlon v. City of Dickinson*, 72 N.D. 190, 5 N.W.2d 411 (1942) [A prescriptive right to empty sewage into a river was not obtained because the adverse use had not existed for a sufficient length of time].

The American Law Institute suggests that a use of land creates an easement by prescription provided the use is (1) adverse, (2) continuous and uninterrupted, and (3) for the period of prescription. Restatement of Property, Servitudes § 457 (1944). Such an approach is consistent with our caselaw on the acquisition of other prescriptive rights. *See Hartlieb v. Sawyer Tp. Bd.*, 366 N.W.2d 486 (N.D.1985) [The basic requirements for establishing a road by prescription pursuant to Section 24–07–01, NDCC, (1) general, continuous, uninterrupted, and adverse use of a road, (2) by

the public under a claim of right, (3) for a period equal to that for the limitation of real actions].

An examination of the first two elements is not necessary for the resolution of this case. The trial court made the following finding:

"The evidence also establishes that the frequency of use of the plaintiff's land for draining for the diverted flow has been continuous, uninterrupted, open, hostile, and adverse to the plaintiff for almost 24 years prior to his commencing this action."

Nagel has not challenged this finding on appeal. Nagel challenges only the trial court's conclusion that the County's actions for those 24 years establishes a prescriptive easement which would bar Nagel's action for recovery. We thus consider the third element of prescriptive easement, the period of prescription.

 Nagel contends that a county cannot claim a prescriptive right to private land within forty years from the commencement of the prescriptive use. Nagel relies on Section 28–01–01, NDCC, which provides:

"The state of North Dakota will not sue any person for or in respect to any real property or the issues or profits thereof by reason of the right or title of the state to the same, unless:

1. Such right or title shall have accrued within forty years before any action or other proceeding for the same shall be commenced; or

2. The state or those from whom it claims shall have received the rents and profits of such real property or of some part thereof within the space of forty years."

In our view, Section 28–01–01, NDCC, is not applicable to this case. The California Supreme Court has interpreted a like-statute, Cal.Code Civ.Proc. § 315,[3] and that

---

2. *See also* Section 24–07–01, NDCC, which discusses prescriptive public roads.

3. Cal.Code Civ.Proc. § 315, as quoted by the court in *People v. Banning*, 167 Cal. 643, 140 P. 587 (Cal.1914), provided:

"The people of this state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless: (1) Such right or title shall have accrued within ten years before any action or

interpretation is instructive in our case. In *People v. Banning*, 167 Cal. 643, 140 P. 587 (Cal.1914) the court interpreted the phrase, "right or title", to refer to the right or title of the State to sue, not the right or title of the land upon which the State bases its action. The *Banning* court cited, with approval, an earlier California case, *People v. Center*, 66 Cal. 551, 6 P. 481 (Cal.1885), which held that Section 315 should be construed to read that the State will not sue for, or in respect to, real property, except where the cause of action has accrued within [forty] years from the commencement of the suit. This interpretation by the California Supreme Court is sound, and we adopt it as it applies to Section 28–01–01, NDCC. A contradictory interpretation would produce the illogical result that the State could not maintain an action in respect to real property of which it had held title for more than forty years before commencement of the action, though the cause of action accrued within that period.

Nagel contends that Section 28–01–01, NDCC, provides that the State or a subdivision, thereof, cannot claim a prescriptive right to private land within forty years from the commencement of the prescriptive use. Nagel's contention is directly contradictory to the terms of the statute, as we interpret it, which provide that the State must bring an action for real property within forty years from the time the cause of action accrued.[4] Section 28–01–01 limits the time in which the State may assert a cause of action against a wrong committed by another party against the State's interest in real property, but does not dictate the time in which the State may obtain a right by prescriptive use.

The time in which a right by prescription may be obtained is "the period prescribed by any law of this state as sufficient to bar

an action for the recovery of the property ..." Section 47–06–02, NDCC. The period prescribed to bar an action for recovery of real property in this state is twenty years. Section 28–01–04, NDCC. Thus, the required period of adverse use to acquire an easement by prescription is twenty years. *See Conlin v. Metzger, supra* [applying former statutes R.C.1943, §§ 47–0602 and 28–0104]; *Conlon v. City of Dickinson, supra* [applying former statutes C.L.1913 §§ 5470 and 7362]. The County has satisfied all requirements to obtain an easement by prescription.

Nagel has seized upon *Conlon, supra,* to suggest that there is an additional requirement to the three requirements herein discussed. In *Conlon*, the plaintiff brought an action in 1938 to complain of the city of Dickinson's practice of dumping sewage into the Heart River. The plaintiff alleged that the practice interfered with the enjoyment of his farm along the Heart, which he purchased in 1928. The court found that, although Dickinson began the practice of dumping sewage into the Heart River in 1907, the sewage did not begin to cause "offensive" pollution until 1926. Because the practice did not become offensive until 1926, the court found that the period for acquiring a prescriptive right, if one could be obtained under the circumstances, did not begin to run until that date. Nagel contends that *Conlon* is applicable inasmuch as he did not suffer "offensive" damages until 1984 and thus any period of prescription should run from that date.

Nagel's reliance on *Conlon* is misplaced. An easement is a burden on one estate for the benefit of another. *Johnson v. Armour & Co.*, 69 N.D. 769, 291 N.W. 113 (1940). In *Conlon*, the court determined that the property owned by the plaintiff did

other proceeding for the same is commenced; or (2) the people, or those from whom they claim, shall have received the rents and profits of such real property, or some part thereof, within the space of ten years."

**4.** In support of his contention, Nagel cites *United States v. 202.76 Acres of Land, More or Less,* 439 F.Supp. 483 (D.N.D.1977). Insofar as the conclusion reached in that case might be read to support Nagel's contention that Section 28–01–

01, NDCC, provides that the State cannot claim a prescriptive right to private land within forty years from the commencement of the prescriptive use, we note that decision does not reflect a consideration of contrary interpretations placed upon nearly identical statutes by courts in California and New York. *See,* e.g., *People v. Banning,* 167 Cal. 643, 140 P. 587 (Cal.1914); *People v. Brooklyn Union Gas,* 195 N.Y.S. 303 (N.Y.Sup. Ct.1920).

not become burdened until 1926, when the polluted stream became so offensive as to affect the property. In the case at bar, the land was burdened with each flow since completion of the improvements in 1965. The period of prescription does not begin when the owner becomes offended by the burden placed on his land but rather, when the burden is placed on the land. Thus, any consideration of the varying amounts of flowage resulting from the improvements completed in 1965 goes to the extent of the prescriptive right not to its acquisition.

■■■■ The extent of a prescriptive easement is determined by "the nature of the enjoyment by which it was acquired." Section 47–05–07, NDCC. The easement was acquired by the flowage of excess surface water onto Nagel's property. The nature of such flowage is that the amount is dependent upon precipitation levels which vary from month to month and year to year. Nagel testified that he knew his land would be burdened by excess water as a result of the change in the drainage pattern and it is inconceivable that he did not know that the extent of the burden would vary with each flow.

The resulting effect of the County's adverse use of Nagel's property for the prescriptive period is that the County cannot now be held liable for its use during the prescriptive period. *See* Restatement of Property, Servitudes § 465 (1944). Rights obtained by prescriptive use relate back to the inception of the use. *Conlin, supra.* Thus, although the County's invasion of Nagel's property may have created a cause of action during the prescriptive period, the County's subsequent acquisition of the right of use by prescription leaves Nagel without the rights upon which an action could be maintained.

The judgment of the district court dismissing the complaint is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.